1997 ND 162

**FRONTEER DIRECTORY CO., INC.,**
**Plaintiff and Appellee,**

v.

**Gerald MALEY, Defendant**
**and Appellant.**

**Civil No. 970026.**

Supreme Court of North Dakota.

Aug. 11, 1997.

Orell D. Schmitz, of Schmitz, Moench & Schmidt, Bismarck, for plaintiff and appellee.

Jonathan P. Sanstead and Patrick W. Durick (appearance), of Pearce & Durick, Bismarck, for defendant and appellant.

SANDSTROM, Justice.

[¶ 1] Gerald Maley appealed from a judgment awarding Fronteer Directory Co., Inc. (Fronteer Directory) $4,457.82 for the outstanding balance Maley owed Fronteer Directory on a promissory note. Maley asserts the trial court erred in rejecting his counterclaim against Fronteer Directory for tortious interference with an unwritten employment contract. Because it is unclear from the trial court's decision whether the law was properly applied in this case, we reverse and remand for preparation of the findings necessary to resolve Maley's tortious interference claim.

I

[¶ 2] In 1991, while employed as a sales manager with Fronteer Directory, Maley borrowed $15,000 from Fronteer Directory for the down payment on his new home in Idaho. The loan was evidenced by a promissory note due September 1, 1991. The parties expected the loan could be repaid from bonuses Maley received from Fronteer Directory.

[¶ 3] In April 1992, Maley resigned from Fronteer Directory and returned to North Dakota. Fronteer Directory agreed with Maley to assume his home mortgage payments until the home was sold in return for the right to use the home to house other Fronteer Directory employees in Idaho. The parties also agreed any proceeds from the sale of the home would be applied to the unpaid balance due on the promissory note.

[¶ 4] Fronteer Directory made the May 1992 mortgage payment, but not the June and July 1992 payments. Fronteer Directory sold the home in July 1992 and credited the $8,859.18 in proceeds against the amount Maley owed on the note. After improperly adding the May 1992 mortgage payment it made to the amount due on the note, Fronteer Directory claimed Maley owed it $7,000.82.

[¶ 5] In May 1993, Maley discussed possible employment with representatives of Fronteer Personnel Service, Inc. (Fronteer Personnel), a wholly-owned subsidiary of Fronteer Directory that provides payroll services to employers. According to Maley, he entered into an oral at-will employment agreement with Fronteer Personnel. Maley claimed this oral agreement incorporated the terms of a written wage summary sheet shown to him by Fronteer Personnel representatives. Under the salary and commission structure, Maley argued he was entitled to a base annual salary of $40,000 and commissions based on the number of checks written for "EACH EMPLOYEE SIGNED UP," which would be paid to him "AS LONG AS THEY REMAIN ON PAYROLL WITH FPS," and commissions for "EACH EMPLOYEE SIGNED UP" for insurance, which would be paid to him "AS LONG AS THEY REMAIN ON THE INSURANCE PLAN."

[¶ 6] After Maley worked for approximately one year at Fronteer Personnel, Dennis Olson, president of Fronteer Directory, asked Maley to leave Fronteer Personnel and return to work for Fronteer Directory. Six months after doing so, Maley resigned from Fronteer Directory.

[¶ 7] Fronteer Directory then sued Maley to collect the $7,000.82 it claimed was due under the promissory note. Maley denied owing any balance on the promissory note and instead asserted he was entitled to $2,837.31 for an unpaid retirement plan refund, unpaid reserve account, and overpayment of the original loan, as well as $3,000 in commissions Fronteer Personnel owed him, which had not been paid because of Fronteer Directory's tortious interference with his oral employment contract with Fronteer Personnel. The gist of Maley's tortious interference counterclaim was Olson, as president of

Fronteer Directory, wrongfully directed Fronteer Personnel, the wholly-owned subsidiary, to not pay Maley post-employment commissions.

[¶ 8] Following a bench trial, the trial court ruled Fronteer Directory must deduct from the $7,000.82 the amount of the May 1992 mortgage payment added to the note's balance, as well as the two other mortgage payments Fronteer Directory agreed, but failed, to pay. The court made no findings about the unpaid retirement plan and reserve account because Maley "did not plead and give adequate notice" to Fronteer Directory about these items. In its memorandum opinion, the trial court rejected Maley's counterclaim:

"As to Gerald's claim for tortious interference, the Court agrees with [Fronteer Directory]. Defendant's Exhibit 8 is evidence of a proposal sheet for discussion purposes and not a contract between the parties.

"According to Gerald, the terms of the parties' contract, Defendant's Exhibit 8, could not be performed within a year. Gerald contends that Defendant's Exhibit 8 entitles him to commissions '. . . As Long As They Remain On Payroll With FPS.' Under Gerald's interpretation, he is entitled [to] commissions for years to come. [Fronteer Personnel], the party to be charged, did not sign Defendant's Exhibit 8. Gerald's interpretation results in a violation of the Statute of frauds. [Fronteer Personnel] did not sign Defendant's Exhibit 8 and the agreement cannot be performed within a year. *See,* § 9–06–04, N.D.C.C."

[¶ 9] In its findings of fact and conclusions of law, the trial court summarized its rejection of the counterclaim:

"Mr. Maley's claim for tortious interference is without merit. According to Mr. Maley the terms of the parties' contract could not be performed within one year. This contract is then subject to the statute of frauds. [Fronteer Personnel], the party to be charged, did not sign the agreement

and therefore any contract resulting from this would violate the statute of frauds. See, Section 9–06–04, N.D. Cent.Code."

[¶ 10] The trial court had jurisdiction under N.D.C.C. § 27–05–06. Maley's appeal is timely under N.D.R.App.P. 4(a). This Court has jurisdiction under N.D. Const. Art. VI, § 6, and N.D.C.C. § 28–27–01.

## II

[¶ 11] The parties' arguments on appeal focus solely on the trial court's rejection of Maley's counterclaim. Maley asserts the trial court found there was an oral, terminable at-will employment agreement between him and Fronteer Personnel which included the payment of a base salary and commissions during and after his employment, but the court incorrectly concluded the agreement was unenforceable because of the statute of frauds, N.D.C.C. § 9–06–04. Fronteer Directory, contrary to its position at trial, now concedes an oral terminable at-will employment contract can be performed within one year and is not invalidated by the statute of frauds. *See, e.g., Shearon v. Boise Cascade Corporation,* 478 F.2d 1111 (8th Cir.1973) (applying Iowa law); *Johnson v. Harrywell, Inc.,* 47 Ark.App. 61, 885 S.W.2d 25 (1994); *Reiss v. El Bauer Chevrolet Company,* 96 Ill.App.2d 266, 238 N.E.2d 619 (1968); *Drummey v. Henry,* 115 Mich.App. 107, 320 N.W.2d 309 (1982); *Lampert Lumber Co. v. Pexa,* 44 S.D. 382, 184 N.W. 207 (1921); Annot., *Action by employee in reliance on employment contract which violates statute of frauds as rendering contract enforceable,* 54 A.L.R.3d 715 (1973). Instead, Fronteer Directory now argues the statute of frauds issue is irrelevant because the trial court found there was no contract between Maley and Fronteer Personnel entitling him to continuing commissions, and this finding is not clearly erroneous under N.D.R.Civ.P. 52(a). We are unable to discern the basis for the trial court's ruling.

[¶ 12] It is unclear whether the trial court found an unwritten at-will employment contract even existed between Maley and Fron-

teer Directory. Although application of the statute of frauds presupposes the existence of an unwritten agreement or contract, *see Lohse v. Atlantic Richfield Co.*, 389 N.W.2d 352, 354–55 (N.D.1986), the trial court may have believed a decision on this issue was unnecessary because even if a contract did exist, it was invalid under the statute of frauds, a theory now abandoned by Fronteer Directory on appeal. However, the trial court also seemed preoccupied with the lack of Fronteer Personnel's signature on Exhibit 8, the wage summary sheet, and may have concluded the wage summary sheet was not a written contract in and of itself. But this conclusion would not end the inquiry under the circumstances here.

 [¶ 13] Fronteer Directory conceded at oral argument there was some type of informal employment agreement or contract between Fronteer Personnel and Maley. Indeed, it is undisputed Maley provided services for and was paid by Fronteer Personnel for about one year. Missing from the trial court's decision are any findings about the terms of that agreement. *See North Central Jobbers v. Snortland*, 329 N.W.2d 614, 617 (N.D.1983) (terms of oral contract are findings of fact). More specifically, a factual question that needs to be answered here is whether any parts of Exhibit 8, the wage summary sheet, became terms of the employment contract between Fronteer Personnel and Maley. It is well established contracts can be partly oral and partly written. *See, e.g., Jorgensen v. Crow*, 466 N.W.2d 120, 124 (N.D.1991); *Delzer v. United Bank of Bismarck*, 459 N.W.2d 752, 755 (N.D.1990); *Odegaard v. Investors Oil, Inc.*, 118 N.W.2d 362, 371 (N.D.1962). The absence of Fronteer Personnel's signature on the wage summary sheet as "the party to be charged" under N.D.C.C. § 9–06–04 does not preclude the document's contents from becoming terms of the overall employment agreement.

[¶ 14] The first two elements for establishing tortious interference with contractual relations are the existence of a contract and a breach of the contract. *See Bismarck Realty*

*Co. v. Folden*, 354 N.W.2d 636, 642 (N.D. 1984). Factual findings about the terms of the employment agreement between Fronteer Personnel and Maley are essential for proper resolution of Maley's claim against Fronteer Directory for tortious interference.

### III

[¶ 15] We reverse the judgment and remand the case to the trial court for preparation of the findings necessary to resolve Maley's claim for tortious interference.

[¶ 16] VANDE WALLE, C.J., and NEUMANN, MARING, and MESCHKE, JJ., concur.