Filed 2/16/05 by Clerk of Supreme Court

IN THE SUPREME COURT

STATE OF NORTH DAKOTA

2005 ND 40

Jared Lochthowe, Plaintiff and Appellant

v.

C.F. Peterson Estate, 

Peterson Farm Properties, 

Douglas Thompson, Defendants

and

David Thompson, Defendant and Appellee

No. 20040159

Appeal from the District Court of Ward County, Northwest Judicial District, the Honorable Douglas L. Mattson, Judge.

AFFIRMED.

Opinion of the Court by VandeWalle, Chief Justice.

Irvin B. Nodland, Irvin B. Nodland, P.C., P.O. Box 640, Bismarck, N.D. 58502-0640, for plaintiff and appellant.

Robert J. Lamont, Lamont Law Firm, 1207 15th Avenue Southwest, Minot, N.D. 58701, for defendant and appellee.

Lochthowe v. C.F. Peterson Estate

No. 20040159

VandeWalle, Chief Justice.

[¶1] Jared Lochthowe appealed from a judgment dismissing his action against C.F. Peterson Estate, Peterson Farm Properties, Douglas Thompson and David Thompson, and awarding David Thompson $28,894.36 in damages on his counterclaim against Lochthowe.  We conclude the district court did not abuse its discretion in refusing to allow Lochthowe to amend his complaint to allege a claim for unjust enrichment against David Thompson because, under the circumstances, unjust enrichment is unavailable as a matter of law.  We further conclude the district court’s award of damages to David Thompson on his claim of unlawful interference with a business relationship is not clearly erroneous.  We affirm.

I

[¶2] In 1999 Lochthowe leased 611.2 acres of Ward County farmland on a cash rent basis from the C.F. Peterson Estate for $35 per acre.  At the time they entered into the lease, Douglas Thompson, the personal representative of the Estate, told Lochthowe the land would be sold in 2000 and that he would be given an opportunity to bid on it.  Because of heavy and persistent rains during the spring of 1999, Lochthowe was able to plant only 160 of the 611.2 acres, and the crop on those 160 acres was subsequently destroyed by hail early in the season.  Lochthowe had purchased crop insurance for the 160 acres and, to collect the insurance proceeds, he had to plow under this acreage.  Afterward, Lochthowe again asked Douglas Thompson what the Estate’s plans were for the farmland in 2000.  Douglas Thompson advised Lochthowe that he could lease the land for the same price, and if the land would be offered for sale, he could bid on the property.  Douglas Thompson also informed Lochthowe he would be reimbursed for any work he did on the farmland.  Lochthowe subsequently applied $3,800 in chemicals to the land and summer fallowed the property.

[¶3] During the spring of 2000, Lochthowe learned that the Estate was offering the land for sale to the highest bidder.  Lochthowe and his father submitted the highest bids.  However, the Estate informed Lochthowe and his father that, because of a right of first refusal contained in the Peterson Farm Properties partnership agreement, they would have to post an additional $20,000 before their bids could be accepted.  The Estate also informed them that, in the alternative, they could lease the property for $46 per acre, more than the $35 per acre Douglas Thompson had promised Lochthowe the previous summer.  Lochthowe made a counteroffer to the Estate to cash rent the land for $35 per acre or have the Estate reimburse him $30,560 for applying chemicals to and summer fallowing the land.  The Estate, through Douglas Thompson, refused Lochthowe’s offer and instead allowed David Thompson, an heir of the Estate, to lease the land for $30 per acre.  David Thompson later purchased the 611.2 acres plus additional property from the Estate for the amount Lochthowe and his father had bid.

[¶4] After Lochthowe’s demand for payment was rejected, he filed an agricultural supplier’s lien in September 2000 against the Estate and Peterson Farm Properties.  David Thompson’s name was also written on the lien.  Lochthowe hand delivered the lien to Cargill, Inc., where David Thompson stored his grain, informed Cargill he had a lien on the grain, and told Cargill any check for sales of grain by David Thompson had to have Lochthowe’s name on it.  Lochthowe later visited Cargill on two occasions to see if David Thompson had sold any grain.

[¶5] Lochthowe sued the Estate, Peterson Farm Properties, Douglas Thompson and David Thompson seeking $30,560 because “Defendants terminated the Plaintiff[’]s lease and did not reimburse him for the summer fallow on said property.”  David Thompson counterclaimed for unlawful interference with business relations, asserting Lochthowe had filed an illegal lien against him which damaged his credit, made it impossible for him to sell his grain, delayed his ability to pay creditors, and increased his interest costs.

[¶6] Before trial, the parties informed the court that Lochthowe had settled and entered into a “P[i]erringer type release” with Douglas Thompson, the Estate and Peterson Farm Properties for payment of $8,000, and the court dismissed those defendants from the lawsuit.  The court held a bench trial on Lochthowe’s claim against David Thompson and David Thompson’s counterclaim against Lochthowe.  After the trial, Lochthowe moved under N.D.R.Civ.P. 15(b) to amend his pleadings to include a claim for unjust enrichment against David Thompson.  The court denied the motion because “the evidence offered at trial was relevant to pled and unpled claims of recovery.”  The court dismissed Lochthowe’s claim against David Thompson, concluding “joint and several liability” could not exist between David Thompson and the other dismissed defendants to support Lochthowe’s action because David Thompson was not “a party to a lease agreement that was clearly between Locht[h]owe and P.R. Douglas Thompson.”  The court further ruled in favor of David Thompson on his counterclaim against Lochthowe for unlawful interference with business relations and awarded him $28,894.36 in damages.

II

[¶7] On appeal, Lochthowe argues the district court erred in refusing to allow him to amend his complaint against David Thompson so the court could consider the doctrine of unjust enrichment in arriving at its decision.

[¶8] Under N.D.R.Civ.P. 15(b), a pleading may be impliedly amended by the introduction of evidence which varies the theory of the case and which is not objected to on the grounds it is not within the issues in the pleadings.  
Mann v. Zabolotny
, 2000 ND 160, ¶ 12, 615 N.W.2d 526.  Amendment of pleadings by implication may only arise when the evidence introduced is not relevant to any issue pleaded in the case.  
Id.
  Whether an issue is tried by the implied consent of the parties is a matter within the district court’s discretion and will not be reversed on appeal absent an abuse of discretion.  
Tarnavsky v. Tarnavsky
, 2003 ND 110, ¶ 13, 666 N.W.2d 444.  An abuse of discretion occurs only when the district court acts in an arbitrary, unconscionable, or unreasonable manner, or when its decision is not the product of a rational mental process leading to a reasoned determination.  
Gonzalez v. Tounjian
, 2004 ND 156, ¶ 9, 684 N.W.2d 653.  We conclude the district court did not abuse its discretion in denying Lochthowe’s motion to amend the pleadings because, as a matter of law under the undisputed facts in this case, Lochthowe cannot show David Thompson was unjustly enriched.

[¶9] Unjust enrichment is an equitable doctrine, applied in the absence of an express or implied contract, to prevent a person from being unjustly enriched at the expense of another.  
Apache Corp. v. MDU Res. Group, Inc.
, 1999 ND 247, ¶ 13, 603 N.W.2d 891.  To recover under a theory of unjust enrichment, one must prove (1) an enrichment; 2) an impoverishment; (3) a connection between the enrichment and the impoverishment; (4) absence of a justification for the enrichment and impoverishment; and (5) an absence of a remedy provided by law.  
Zuger v. North Dakota Ins. Guar. Ass’n
, 494 N.W.2d 135, 138 (N.D. 1992).  A determination of unjust enrichment is a conclusion of law fully reviewable by this Court.  
Ritter, Laber and Assoc., Inc. v. Koch Oil, Inc.
, 2004 ND 117, ¶ 26, 680 N.W.2d 634.

[¶10] When an impoverishment results from a valid contractual arrangement made by a party, the result is not contrary to equity and there has been no unjust enrichment. 
BTA Oil Producers v. MDU Res. Group, Inc.
, 2002 ND 55, ¶ 23, 642 N.W.2d 873. Therefore, we have said unjust enrichment generally applies only in the absence of a contract between the parties, and there can be no implied-in-law contract when there is an express contract between the parties relative to the same subject matter.  
Id.
 at ¶ 37.  Moreover, although a third party may benefit from a contractual arrangement between others, respect for that contractual arrangement requires that courts refuse restitution between parties who did not contract with each other.  
Apache Corp.
, 1999 ND 247, ¶ 14, 603 N.W.2d 891; D. Dobbs, 
Law of Remedies
 § 4.9(4) (2nd ed. 1993).  Consequently, a third party who derives gain from an agreement between others has not necessarily been unjustly enriched, unless the third party has participated somehow in the transaction through which the benefit is obtained.  
Zuger
, 494 N.W.2d at 139; 
Midland Diesel Serv. & Engine Co. v. Sivertson
, 307 N.W.2d 555, 558 (N.D. 1981).  In 
Home Ins. of Dickinson v. Speldrich
, 436 N.W.2d 1, 3 (N.D. 1989) (quoting 
Paschall’s, Inc. v. Dozier
, 407 S.W.2d 150, 154-55 (Tenn. 1966)), we explained:

“Indisputably, where one is afforded recovery from the person with whom he has a contract, he cannot also recover from third persons incidentally benefited by his performance.  In such a case it could hardly be said that the retention of the benefit by the third party is unjust as to the furnisher.  However, the situation is dissimilar where a person furnishes materials and labor under a contract for the benefit of a third party, and that contract becomes unenforceable or invalid.  In that situation there is certainly no reason to preclude the furnisher or subcontractor from seeking recovery against the third person on the theory of quantum meruit [
i.e.
, unjust enrichment].”

 

[¶11] The situation in this case is somewhat analogous to the facts in 
D.C. Trautman Co. v. Fargo Excavating Co., Inc.
, 380 N.W.2d 644 (N.D. 1986).  In 
D.C. Trautman Co.
, Fargo Excavating contracted with the City of Fargo to demolish and remove structures in preparation for a new building to be constructed by Dakota Bank & Trust Company.  A common wall separated Royal Jewelers from one of the buildings to be demolished.  The common wall was extensively damaged during the demolition and Fargo Excavating, under a directive from the City, entered into an oral agreement with Trautman to have Trautman repair and strengthen the common wall.  After completing the task and spending more than $36,000 on the project, Trautman received no payment and sued Fargo Excavating, Great American Insurance Company, Dakota Bank & Trust Company, the City and Royal Jewelers seeking compensation.  Before trial, Trautman entered into a settlement agreement with all defendants except Royal Jewelers and the other defendants assigned any rights they may have had against Royal Jewelers to Trautman.  Trautman proceeded to trial against Royal Jewelers on the theory of unjust enrichment, and at the close of Trautman’s case, the district court dismissed Trautman’s claim on the ground that it had failed to establish the elements necessary for recovery.

[¶12] This Court affirmed, relying in part on the principle that a party is not entitled to equitable relief in the form of unjust enrichment if there is an adequate remedy provided by law:

Trautman had such a remedy in this case.  The trial court found that Trautman had an oral agreement with Fargo Excavating to perform the repair work and that Fargo Excavating, pursuant to that agreement, was liable to Trautman for the entire amount of the project, together with interest.  Those findings by the trial court are supported by the evidence in the record and are not clearly erroneous. Accordingly, Trautman had an adequate remedy at law for breach of contract which precludes alternative equitable relief.

 

D.C. Trautman Co.
, 380 N.W.2d at 645-46.  Trautman’s settlement did not diminish the adequacy of Trautman’s legal remedy of a breach of contract action against Fargo Excavating.

[¶13] During the trial in this case, Lochthowe argued he had an agreement with Douglas Thompson, the personal representative of the Estate, and Peterson Farm Properties to either be reimbursed for his improvement to the farmland or be allowed to lease or purchase the land the following year.  Lochthowe testified that he had no agreement of any kind with David Thompson and conceded there is no evidence in the record to show that David Thompson participated in the termination of his lease.  Indeed, David Thompson, although an heir of the Estate, testified he “didn’t get along” with Douglas Thompson.  Lochthowe settled with all defendants except David Thompson through a “P[i]erringer type release” which is not included in the record on appeal.  Generally, a 
Pierringer
 release releases the settling defendants’ liability but allows the plaintiff to proceed against nonsettling defendants for their percentage of causal negligence.  
See
 
Pierringer v. Hoger
, 124 N.W.2d 106 (Wis. 1963); 
Bartels v. City of Williston
, 276 N.W.2d 113, 119 (N.D. 1979).  The district court found Lochthowe had an agreement concerning reimbursement for summer fallow work with Douglas Thompson on behalf of the Estate.  As in 
D.C. Trautman Co.
, Lochthowe had a legal remedy for breach of contract against Douglas Thompson, the Estate and Peterson Farm Properties, but settled with them before trial.  
See
 
Tong v. Borstad
, 231 N.W.2d 795, 800 (N.D. 1975) (custom and usage authorized tenant to be compensated by landlord for summer fallow work).

[¶14] We conclude Lochthowe had an adequate legal remedy which precluded him from pursuing an unjust enrichment action against David Thompson as a matter of law.  Consequently, we conclude the district court did not abuse its discretion in refusing to allow Lochthowe to amend his complaint under N.D.R.Civ.P. 15(b).

III

[¶15] Lochthowe argues the district court erred in awarding David Thompson $28,894.36 on his counterclaim for unlawful interference with a business relationship.

[¶16] In 
Trade ’N Post, L.L.C. v. World Duty Free Americas, Inc.
, 2001 ND 116, ¶ 36, 628 N.W.2d 707, we said:

[I]n order to prevail on a claim for unlawful interference with business, a plaintiff must prove the following essential elements: (1) the existence of a valid business relationship or expectancy; (2) knowledge by the interferer of the relationship or expectancy; (3) an independently tortious or otherwise unlawful act of interference by the interferer; (4) proof that the interference caused the harm sustained; and (5) actual damages to the party whose relationship or expectancy was disrupted.

 

See also
 
Smith Enter., Inc. v. In-Touch Phone Cards, Inc.
, 2004 ND 169, ¶ 19, 685 N.W.2d 741; 
Mr. G’s Turtle Mountain Lodge, Inc. v. Roland Township
, 2002 ND 140, ¶ 25, 651 N.W.2d 625.  We review a district court’s findings on a claim of unlawful interference with a business relationship under the clearly erroneous standard of N.D.R.Civ.P. 52(a).  
Smith Enter., Inc.
, 2004 ND 169, ¶ 21.  A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if no evidence exists to support the finding, or if, on the entire record, we are left with a definite and firm conviction a mistake has been made.  
Id.
 at ¶ 9.

[¶17] David Thompson’s counterclaim against Lochthowe for unlawful interference with a business relationship was based on Lochthowe filing the agricultural supplier’s lien against the Estate and Peterson Farm Properties in September 2000 and Lochthowe’s actions with Cargill regarding that lien.  David Thompson’s name was handwritten on the lien document as an additional person to whom Lochthowe had furnished supplies.  Lochthowe testified it was his attorney at the time who added David Thompson’s name to the document.  Lochthowe personally delivered the lien to a Cargill employee, Larry Rapp, and told him that his name was required to be on any check for grain sold in the name of David Thompson, Douglas Thompson, the Estate or Peterson Farm Properties.  Rapp checked with Cargill’s legal department and was advised to include Lochthowe’s name on any check written to David Thompson for the sale of grain.  Lochthowe later stopped at Cargill on two occasions to ask Rapp whether David Thompson had sold any grain.  Because of the lien, David Thompson did not sell his grain.

[¶18] Lochthowe argues David Thompson should not have prevailed on his counterclaim because under N.D.C.C. § 35-31-02(5), the social security number or taxpayer identification number of the person to whom supplies were furnished must appear on the lien to be valid and enforceable, and only the taxpayer identification number of the Estate appeared on the document.  Lochthowe argues the lien was actually ineffective against David Thompson and Cargill should have been aware of this fact.

[¶19] Although the lien may arguably have been invalid as against David Thompson personally, Lochthowe treated the lien as valid against David Thompson at all relevant times in this case.  Rapp testified that he would not have required that Lochthowe’s name be included on checks for the sale of David Thompson’s grain if Lochthowe, the person filing the lien, had not personally delivered the lien to him and informed him that the lien applied to everyone listed on the document.  Although Lochthowe admitted David Thompson was the wrong person to name on the lien, Lochthowe refused to remove his name from the lien after David Thompson requested that he do so.  Rapp also testified that David Thompson wanted to sell some of his grain but did not when Rapp informed him Lochthowe’s name would be included on the check.  As the district court noted:

From his hand delivery of the agricultural supplier’s lien to Cargill and his follow up discussions with Mr Rapp, Locht[h]owe knew full well how Cargill was going to . . . view his lien in regard to Thompson.  Locht[h]owe knew his lien was holding up Thompson’s grain sales.  Back in December 2000, Locht[h]owe (or his then legal counsel) could have easily told Rapp and/or Thompson that the lien was not meant to apply to Thompson personally.

 

Under the circumstances of this case, the district court was not precluded from finding that Lochthowe unlawfully and intentionally interfered with David Thompson’s business relationships even though the lien was legally invalid against him. 

[¶20] The district court found that the first two elements for unlawful interference with a business relationship were satisfied because “the evidence was unequivocal that Thompson had a business relationship with Cargill and that Locht[h]owe had knowledge of [the] relationship.”  The court found the third element was satisfied by Lochthowe’s actions regarding the lien.  The court also found the fourth and fifth elements, harm and actual damages, were satisfied based on evidence that David Thompson incurred interest expenses of $13,037.28 and storage expenses of $15,857.08 because his operating loan was continued beyond April 1, 2001 due to his inability to sell a sufficient amount of grain to pay the loan.  We conclude the district court’s finding that Lochthowe unlawfully and intentionally interfered with David Thompson’s business relationships is not clearly erroneous.

[¶21] Lochthowe argues that David Thompson failed to mitigate his damages.  Lochthowe contends David Thompson either could have sold the grain in both names at a better price than he ultimately received without incurring the storage charges, or could have deposited $30,560 with the clerk of court to minimize the damages.  One who is injured by the wrongful acts of another has a duty to minimize or lessen the resulting damage and must “‘protect himself if he can do so with reasonable exertion or at trifling expense, and can recover from the delinquent party only such damages as he could not, with reasonable effort, have avoided.’”  
Schneidt v. Absey Motors, Inc.
, 248 N.W.2d 792, 797 (N.D. 1976) (quoting 
Nicola v. Meisner
, 84 N.W.2d 702, 705  (N.D. 1957)).  The district court found that “[n]o credible evidence was presented that Thompson had ready resources to avoid or mitigate the damages from the lien.  Any mitigation or avoidance of damages Thompson could have done was dependant on Locht[h]owe’s cooperation.”  We conclude the district court’s finding that David Thompson did not have sufficient resources to mitigate the damages is not clearly erroneous.

IV

[¶22] The judgment is affirmed.

[¶23] Gerald W. VandeWalle, C.J.

Dale V. Sandstrom

William A. Neumann

Mary Muehlen Maring

Carol Ronning Kapsner