2006 ND 15

**EDWARD H. SCHWARTZ CONSTRUCTION, INC.,**
**Plaintiff and Appellee**

v.

**Garry DRIESSEN d/b/a A & G Construction Company, Defendant and Appellant.**

**No. 20050150.**

Supreme Court of North Dakota.

Jan. 31, 2006.

Dann E. Greenwood, Greenwood & Ramsey, PLLP, Dickinson, ND, for plaintiff and appellee.

Ronald G. Schmidt, Schmidt, Schroyer, Moreno & Lee, P.C., Rapid City, SD, for defendant and appellant.

CROTHERS, Justice.

[¶ 1] Garry Driessen, doing business as A & G Construction Company, appeals from a judgment awarding Edward H. Schwartz Construction, Inc., $20,615, plus interest, for breach of an oral contract to provide aggregate at $2 per cubic yard for a road construction project. We conclude the district court did not clearly err in finding Driessen orally contracted with Schwartz Construction to provide aggregate for the project at $2 per cubic yard, and we affirm.

## I

[¶ 2] In May 2002, the North Dakota Department of Transportation solicited bids on County Federal Aid Project No. SC–1927(056) for grading and aggregate surfacing of a county road south of Carson. Bids for the project were due on May 17, 2002, and on the evening of May 16, 2002, Randall Schwartz, the president of Schwartz Construction, secured bids from prospective subcontractors for the different parts of the project, including aggregate. According to Schwartz, Driessen orally offered to provide aggregate at $2 per cubic yard for the project. According to Driessen, his quote for the aggregate was $2 per ton. Schwartz testified he informed Driessen that Driessen had the low bid for the aggregate and that Schwartz Construction's bid for the project was based on Driessen's bid for the aggregate. Schwartz Construction was awarded the contract for the project, and Driessen acknowledged that he learned Schwartz Construction had been awarded the contract shortly after the bids were opened on May 17, 2002.

[¶ 3] The parties did not have any further contact until June 2002, when Schwartz and Driessen had a telephone conversation and Schwartz Construction faxed several documents to Driessen. According to Driessen, he received a call from Schwartz on June 23, 2002, while Driessen was traveling to Aberdeen, South Dakota. Driessen testified he had taken other work in Aberdeen, because he did not know he had the job with Schwartz Construction. Driessen testified that during the phone conversation, Schwartz said "[h]e wanted [Driessen] to do the job," and Driessen replied that "maybe we could do it on the way back." According to Schwartz, he asked Driessen "point-blank if he was still going to do [the job]. And [Driessen] said, yeah, he'd do it after South Dakota." On June 26, 2002, Schwartz Construction faxed several docu-ments to Driessen, including a cover letter, a request to sublet form, and a standard subcontract agreement form for the project. Those documents stated the price for the aggregate was $2 per cubic yard. In the cover letter, Schwartz Construction asked Driessen to "sign & mail subcontracts & request to sublet back to me," but Driessen did not return those documents to Schwartz Construction.

[¶ 4] Driessen did not provide Schwartz Construction with the aggregate for the project, and Schwartz Construction subsequently subcontracted with another firm to provide aggregate for the project at the price of $2.95 per cubic yard. Schwartz Construction sued Driessen for the difference in prices. Schwartz Construction claimed Driessen had contracted to provide aggregate for the project at the price of $2 per cubic yard. Driessen claimed there was no contract because his quote was conditioned upon Schwartz Construction providing a gravel pit to supply the aggregate, his quote was not accepted by Schwartz Construction in a timely manner, and his quote was to provide the aggregate at $2 per ton and not $2 per cubic yard. After a bench trial, the district court found Driessen contracted with Schwartz Construction to provide aggregate for the project at $2 per cubic yard. The court awarded Schwartz Construction damages of $20,615, plus interest.

## II

[¶ 5] During oral argument to this Court, Driessen abandoned his claim that this Court's review of the district court's findings is not governed by the clearly erroneous rule because the court's findings rest primarily upon documentary evidence. *Compare Dolajak v. State Auto. & Cas. Underwriters*, 252 N.W.2d 180, 181–82 (N.D.1977) (declining to apply clearly erroneous rule to findings based on documen-

tary evidence), *with Stracka v. Peterson,* 377 N.W.2d 580, 582 (N.D.1985) (applying clearly erroneous rule to findings based on undisputed facts or documentary evidence). Driessen argues the district court clearly erred in finding he orally contracted with Schwartz Construction to provide aggregate for the project at $2 per cubic yard. Driessen argues there was no meeting of the minds between the parties, because his offer was conditioned upon Schwartz Construction securing a gravel pit to supply the aggregate, his offer was not accepted in a timely manner and lapsed, and his offer was to supply aggregate at $2 per ton. Driessen argues the district court's finding that there was an oral contract is not supported by substantial evidence and was induced by an erroneous view of the law. He also claims this Court should be left with a definite and firm conviction the district court made a mistake in finding he orally contracted with Schwartz Construction to provide aggregate at $2 per cubic yard.

 [¶ 6] The existence of an oral contract and the extent of its terms are questions of fact, subject to the "clearly erroneous" standard of review under N.D.R.Civ.P. 52(a). *Forster v. West Dakota Veterinary Clinic, Inc.,* 2004 ND 207, ¶ 57, 689 N.W.2d 366; *Comstock Constr., Inc. v. Sheyenne Disposal, Inc.,* 2002 ND 141, ¶ 13, 651 N.W.2d 656. In *Brandt v. Somerville,* 2005 ND 35, ¶ 12, 692 N.W.2d 144 (citations omitted) we recently outlined our scope of review under the "clearly erroneous" rule:

A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if no evidence exists to support the finding, or if, on the entire record, we are left with a definite and firm conviction the trial court made a mistake. A trial court's choice between two permissible views of the weight of the evidence is not clearly erroneous, and simply be-

cause we may have viewed the evidence differently does not entitle us to reverse the trial court. On appeal, we do not reweigh conflicts in the evidence, and we give due regard to the trial court's opportunity to judge the credibility of the witnesses.

A

 [¶ 7] Driessen argues the district court clearly erred in finding he did not condition his quote upon Schwartz Construction securing a gravel pit for the aggregate. Driessen argues the district court misapplied the law because the performance of the conditions of a proposal is necessary for the acceptance of a proposal under N.D.C.C. § 9–03–20 and the record clearly establishes he conditioned acceptance of his quote upon Schwartz Construction securing a gravel pit.

[¶ 8] Although Driessen testified his offer was conditioned upon Schwartz Construction procuring a gravel pit for the aggregate, Schwartz testified Driessen did not limit or condition his offer to Schwartz Construction. The district court found Driessen did not condition his quote upon Schwartz Construction securing a pit for the aggregate. On appeal, we do not reweigh conflicting evidence, and a choice between two permissible views of the evidence is not clearly erroneous. *Brandt,* 2005 ND 35, ¶ 12, 692 N.W.2d 144. Simply because we may have viewed the evidence differently does not entitle us to reverse the district court. *Id.* We conclude the district court's finding that Driessen did not condition his quote upon Schwartz Construction securing a gravel pit is supported by evidence in this record and that finding was not induced by an erroneous application of the law. We are not left with a definite and firm conviction the court made a mistake in finding Driessen did not condition his quote, and we conclude the court's finding is not clearly erroneous.

## B

■ [¶ 9] Driessen argues the district court clearly erred in finding a contract existed between the parties because Schwartz Construction did not timely accept his offer, which Driessen claims was revoked by the lapse of a reasonable time under N.D.C.C. § 9–03–23(2). Relying on testimony about industry standards, Driessen also claims the evidence establishes Schwartz Construction did not accept Driessen's bid in a timely manner because Schwartz Construction did not accept Driessen's May 16, 2002, quote within the applicable industry standard of three to five days. Driessen also argues the district court's finding of an oral contract overlooks or misconstrues the nexus between a June 23, 2002, telephone conversation between him and Schwartz and documents faxed by Schwartz Construction to Driessen on June 26, 2002. Driessen argues the telephone conversation established he "may" do the job if he got done with another job in South Dakota. Driessen also argues the court's finding totally ignores the "request to sublet" form, which prohibits a contractor from subletting any portion of a contract without the written consent of the engineer. Driessen argues the district court completely overlooked the fact that he neither executed nor returned the "request to sublet" form and he therefore rejected the contract.

[¶ 10] Schwartz testified he told Driessen on May 16, 2002, that Driessen had the low bid for the aggregate and that Schwartz Construction was going to use Driessen's bid for the aggregate in computing its bid for the project. Driessen testified that shortly after the bid letting in May 2002, he learned that Schwartz Construction had been awarded the bid for the project. Although there is evidence in this record about industry standards of a five to ten day acceptance period for a subcontractor's quote, there is also evidence in this record that industry standards establish a contract between a prime contractor and a subcontractor if the subcontractor knows the prime contractor is relying on the subcontractor's quote and the prime contractor is awarded the contract based upon that quote. There is no evidence the parties had any contacts between May 16, 2002, and June 23, 2002, but Schwartz testified that on June 23, 2002, Driessen affirmatively indicated he would provide the aggregate after completing his job in South Dakota.

■ [¶ 11] The district court's memorandum decision may be used to explain the court's findings. *Mougey Farms v. Kaspari*, 1998 ND 118, ¶ 36, 579 N.W.2d 583. The court's memorandum decision explained that Driessen submitted a "firm" offer on May 16, 2002, which did not place a limit on acceptance, and when the parties had a phone conversation in June 2002, Driessen then indicated he could do the job after finishing the work in South Dakota. The court found the contract did not fail because of lack of timely acceptance.

[¶ 12] There is evidence in this record which supports the creation of an oral contract between the parties in May 2002, when Schwartz Construction relied on Driessen's quote and in June 2002, when Driessen agreed to do the job after he got back from South Dakota. In view of that evidence, Driessen's failure to return the "request to sublet" form did not control whether there was an oral contract between the parties. Although there is conflicting evidence about a timely acceptance and the creation of a contract, we do not reweigh conflicts in the evidence and we give due regard to the district court's opportunity to judge the credibility of the witnesses. *Brandt*, 2005 ND 35, ¶ 12, 692 N.W.2d 144. We conclude the court's finding about acceptance is not clearly erroneous.

## C

[¶ 13] Driessen argues his offer for the aggregate was $2 per ton and the parties did not mutually consent to the price of $2 per cubic yard. Driessen argues a comparison of the four quotes received by Schwartz Construction for the aggregate shows something was "out of whack" if his quote was by the cubic yard.

[¶ 14] Although Driessen claimed his bid was $2 per ton, there was evidence Driessen's bid was $2 "per unit" and the project specifications called for cubic yards. Schwartz testified he memorialized the May 16, 2002, phone conversation with Driessen with a contemporaneous note indicating Driessen's bid was $2 per cubic yard. There is evidence Driessen did not object to the $2 per cubic yard price in the documents faxed to him on June 26, 2002. There is also evidence Driessen bid county jobs by the cubic yard, and although this project was administered by the North Dakota Department of Transportation, the job was for a county road. In addition to Driessen's quote, the other quotes for aggregate for this project were $2.10 per ton, $3.48 per cubic yard, and $3.60 per cubic yard. There is evidence in this record that the parties used a 1.35 multiplier to convert tons into cubic yards, and assuming Driessen's quote was per ton, that multiplier would convert his quote to a price of $2.70 per cubic yard. A comparison of that price to the other bids does not definitely and firmly establish something was "out of whack" if Driessen's quote was by the cubic yard.

[¶ 15] The evidence in the record and inferences from that evidence support the district court's finding that Driessen and Schwartz Construction mutually agreed to a price of $2 per cubic yard for the aggregate for the road project. Although there is also contrary evidence, on appeal we do not reweigh conflicts in the evidence and simply because we may have viewed the evidence differently does not entitle us to reverse the district court. *Brandt,* 2005 ND 35, ¶ 12, 692 N.W.2d 144. We conclude the district court's findings were not based on an erroneous application of the law about mutual consent, and we are not left with a definite and firm conviction the court made a mistake in finding Driessen orally contracted with Schwartz Construction to provide aggregate for the project at the price of $2 per cubic yard.

## III

[¶ 16] We affirm the judgment.

[¶ 17] GERALD W. VANDE WALLE, C.J., DALE V. SANDSTROM, CAROL RONNING KAPSNER, and MARY MUEHLEN MARING, JJ., concur.