2008 ND 189

**LORD & STEVENS, INC., dba Express Press, Plaintiff and Appellee**

and

**Michael and Jenny Stevens, Involuntary Plaintiffs**

v.

**3D PRINTING, INC., Defendant and Appellant**

and

**MBA Investments Three, LLC, Defendant.**

No. 20070341.

Supreme Court of North Dakota.

Oct. 22, 2008.

Sara K. Sorenson, Ohnstad Twichell, P.C., West Fargo, N.D., for plaintiff and appellee.

Bruce H. Carlson, McNair, Larson & Carlson, Ltd., Fargo, N.D., for defendant and appellant.

MARING, Justice.

[¶ 1] 3D Printing, Inc. ("3D"), appeals from a judgment dismissing its counter-claim against Lord & Stevens, Inc, doing business as Express Press (collectively

"Express Press"), for expenses incurred during the parties' unsuccessful attempt to merge their printing companies. We conclude the district court's finding the parties' agreement "contemplated that no expenses would be paid" is not clearly erroneous, and therefore, 3D's attempt to use the doctrine of unjust enrichment based on an implied in law contract to recoup those expenses is unavailing as a matter of law. We affirm.

## I

[¶ 2] Express Press and 3D were rival printing companies in Fargo. Express Press was owned by Michael and Jenny Stevens and had been operated by them since 1983. Express Press conducted business out of a commercial building owned by the Stevens. Express Press also owned a Heidelberg color press and a complete line of printing equipment and inventory. 3D was owned by Darrell Vasvick, David Spaeth, and Brad Dahl. Although 3D was a relatively new company started in January 2006, Dahl and Vasvick had significant experience in the printing business and Spaeth had significant experience in sales.

[¶ 3] During 2005, the Stevens decided to sell Express Press because Jenny Stevens, who worked full-time at the business, wanted to stay home to raise the couple's children. When the Stevens failed to find any buyers for the business as a whole, they attempted to sell Express Press as a going concern and to sell the building and Heidelberg press separately. 3D's principals eventually became interested in purchasing Express Press.

[¶ 4] On April 7, 2006, the Stevens entered into an agreement with 3D's principals providing that 3D would take over Express Press's outstanding loans of approximately $388,000 in exchange for Express Press's equipment, customers, and goodwill. Express Press's building and Heidelberg press were not part of the anticipated purchase and were to be sold separately by the Stevens, necessitating a move of Express Press's employees and remaining equipment into 3D's premises. The agreement was memorialized by Jenny Stevens' handwritten notes of the parties' discussions, which was initialed by the Stevens, Spaeth, and Vasvick. The notes did not mention payment of expenses or reimbursement for labor or services which might be provided while the businesses occupied the same building. The district court noted:

> All parties contemplated that Express Press would move into the building occupied by 3D pending completion of the sale. All parties agreed that until the sale was finalized both companies would maintain their own financial records, their own employees, their own accounts, and separately operate their businesses. There was no agreement to share expenses between the companies, and there was no contemplation that the two companies would share profits. Over a course of approximately 6(six) months, the parties needed to demonstrate that a combined entity would be profitable so that 3D could assume the loans of Express Press. The target date of completion of this purchase was October 1, 2006, the terms of the sale were the same whether the sale took place on October 1, 2006 or before.

[¶ 5] 3D made the arrangements to move Express Press's equipment into its building and the move was completed by June 2006. While Express Press was in 3D's building, 3D used Express Press printers and employees for its jobs, and Express Press used 3D's printers and employees for its jobs. The district court found "[n]either company requested reimbursement of the other for this sharing of

equipment or employees as such actions were in anticipation of 3D ultimately acquiring Express Press." The court also found, "[d]uring the time Express Press was in 3D's building, 3D never requested Express Press to pay any portion of the expenses 3D was incurring. This was in accordance with the agreement of the parties."

[¶ 6] Because of its poor financial condition, 3D was unable to complete the purchase of Express Press by October 1, 2006, and the Stevens sold Express Press to a third party. When 3D learned of the sale, 3D presented Express Press with an invoice for more than $100,000 for expenses 3D claimed to have incurred while Express Press's equipment and employees were in its building. 3D also refused to allow Express Press to remove its equipment from the premises.

[¶ 7] Express Press sued 3D and obtained a district court order allowing Express Press to remove its equipment from 3D's premises. 3D filed a counterclaim against Express Press seeking reimbursement of expenses based on theories of joint venture and unjust enrichment and implied contract. Following a bench trial, the district court dismissed 3D's counterclaim. The court ruled no joint venture was formed by the parties. The court further ruled Express Press was not unjustly enriched and there was no implied contract obligating Express Press to pay 3D Printing for "any expenses 3D incurred concerning the potential purchase of Express Press."

## II

[¶ 8] 3D does not challenge the district court's finding that no joint venture was formed by the parties. Rather, 3D argues the district court erred in failing to award it damages based on its theory of unjust enrichment and an implied in law contract.

[¶ 9] We discussed the doctrine of unjust enrichment and contracts implied in law in *Ritter, Laber and Assocs., Inc. v. Koch Oil, Inc.*, 2004 ND 117, ¶ 26, 680 N.W.2d 634:

Unjust enrichment is an equitable doctrine based upon a quasi or constructive contract implied by law to prevent a person from being unjustly enriched at the expense of another. *Cavalier County Mem'l Hosp. Ass'n v. Kartes*, 343 N.W.2d 781, 784 (N.D.1984). The doctrine serves as a basis for requiring restitution of benefits conferred "in the absence of an expressed or implied in fact contract." *Midland Diesel Serv. and Engine Co. v. Sivertson*, 307 N.W.2d 555, 557 (N.D.1981). A determination of unjust enrichment is a conclusion of law and is fully reviewable by this Court. *Opp v. Matzke*, 1997 ND 32, ¶ 8, 559 N.W.2d 837.

"A contract implied in law or a claim of unjust enrichment is a fiction of law adopted to achieve justice where no true contract exists." *B.J. Kadrmas, Inc. v. Oxbow Energy, LLC*, 2007 ND 12, ¶ 11, 727 N.W.2d 270.

[¶ 10] 3D contends because the parties' agreement was "silent as to reimbursement for expenses," the district court was "obligat[ed]" to consider its unjust enrichment and implied in law contract theory of recovery in conjunction with this "missing term[ ]" of the parties' agreement. 3D relies on *Matter of Estate of Hill*, 492 N.W.2d 288, 295 (N.D.1992), in which this Court said, "If, as the trial court found, there was not an express oral agreement between the parties, the court should have considered the possibility of an implied contract to determine if [the claimant] was entitled to relief as she was left without an adequate remedy at law." 3D's reliance

on *Hill* is misplaced because the district court in that case found there was no express contract between the parties, and consequently, the claimant could seek recovery under the unjust enrichment and implied in law contract theory. *Id.* at 294–95. In this case, the district court did not find the parties failed to reach an agreement about reimbursement of expenses.

[¶ 11] In its findings of fact and conclusions of law, the district court found "[n]either company requested reimbursement of the other for this sharing of equipment or employees as such actions were in anticipation of 3D ultimately acquiring Express Press ... During the time Express Press was in 3D's building, 3D never requested Express Press to pay any portion of the expenses 3D was incurring. This was in accordance with the agreement of the parties." The court further found that "[b]oth companies voluntarily entered into this arrangement to foster the consummation of the purchase of Express Press by 3D" and "3D acted in anticipation of a future business advantage or opportunity." The court clarified in its analysis of the case that "[t]he agreement between the parties contemplated that no expenses would be paid." The district court found the parties agreed that no expenses would be paid pending completion of the sale, not that payment of expenses was a term "missing" from the parties' agreement.

[¶ 12] Contracts can be partly written and partly oral, *see Fronteer Directory Co., Inc. v. Maley,* 1997 ND 162, ¶ 13, 567 N.W.2d 826, and can be express or implied. *See* N.D.C.C. § 9–06–01. An implied in fact contract "is one the existence and terms of which are manifested by conduct." *Id.* "When dealing with contracts implied in fact the court is required to determine from the surrounding circumstances what the parties actually intended." *Jerry Harmon Motors, Inc. v. Heth,*

316 N.W.2d 324, 327 (N.D.1982); *see also Good Bird v. Twin Buttes Sch. Dist.,* 2007 ND 103, ¶ 10, 733 N.W.2d 601; *Tobias v. North Dakota Dep't of Human Servs.,* 448 N.W.2d 175, 179 (N.D.1989); *Thiele v. Security State Bank,* 396 N.W.2d 295, 298–99 (N.D.1986). The existence of an oral contract and the extent of its terms are questions of fact subject to the clearly erroneous standard of review under N.D.R.Civ.P. 52(a). *WFND, LLC v. Fargo Marc, LLC,* 2007 ND 67, ¶ 38, 730 N.W.2d 841. Whether there is an express or implied contract between the parties is also a question for the trier of fact. *See Comstock Constr., Inc. v. Sheyenne Disposal, Inc.,* 2002 ND 141, ¶ 13, 651 N.W.2d 656. A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if there is no evidence to support it, or if, on the entire record, we are left with a definite and firm conviction a mistake has been made. *Langer v. Bartholomay,* 2008 ND 40, ¶ 11, 745 N.W.2d 649.

[¶ 13] The district court's finding there was either an express or implied agreement that there would be no reimbursement of expenses between the parties is supported by the record. Jenny Stevens testified "[t]here were conversations ... [v]ery early on" that 3D would not have to pay Express Press's invoices and those invoices were intended only to give 3D a basis to "charge it back to their customer." She further testified that 3D principals did not talk to her about charging for shared labor because "[i]t was always communicated that [invoices were] strictly for scheduling purposes." Michael Stevens testified he understood Express Press would not have to pay 3D any expenses "because we were selling our company to them and it was all for their benefit." He further testified that Express Press never agreed to pay for any expenses and 3D never requested payment of any expenses

until the business was sold to a third party. Vasvick admitted that he had never requested payment from the Stevens because "[t]hey never asked us for any money, so I didn't feel we should ask them for anything either." We conclude the district court's finding that the parties agreed not to be liable for each other's expenses is not clearly erroneous.

[¶ 14] There can be no implied in law contract to prevent unjust enrichment when there is an express or implied in fact contract between the parties relating to the same subject matter. *See, e.g., Lochthowe v. C.F. Peterson Estate,* 2005 ND 40, ¶¶ 9–10, 692 N.W.2d 120; *Syversen v. Hess,* 2003 ND 118, ¶ 11 665 N.W.2d 23; *Spagnolia v. Monasky,* 2003 ND 65, ¶ 16, 660 N.W.2d 223; *BTA Oil Producers v. MDU Resources Group, Inc.,* 2002 ND 55, ¶¶ 37–38, 642 N.W.2d 873; *Dalan v. Paracelsus Healthcare Corp.,* 2002 ND 46, ¶ 24, 640 N.W.2d 726; *First Nat'l Bank of Belfield v. Burich,* 367 N.W.2d 148, 154 (N.D. 1985); *Sykeston Twp. v. Wells County,* 356 N.W.2d 136, 140 (N.D.1984). 3D Printing cannot rely on unjust enrichment and an implied in law contract to recover expenses from Express Press when the parties agreed no expenses would be paid.

[¶ 15] We conclude the district court correctly dismissed the unjust enrichment and implied in law contract claim as a matter of law, and it is unnecessary to address the other issues raised by the parties.

### III

[¶ 16] The judgment is affirmed.

[¶ 17] DALE V. SANDSTROM, DANIEL J. CROTHERS, and CAROL RONNING KAPSNER, JJ., concur.

VANDE WALLE, Chief Justice, concurring in the result.

[¶ 18] The trial court found that all parties contemplated that Express Press "would move into the building occupied by 3D pending completion of the sale." The trial court also found 3D never requested Express Press to pay any expenses 3D was incurring and that this "was in accordance with the agreement of the parties." Considering those findings together, the trial court might also have found that since the move was in contemplation of the sale, the lack of a request to Express Press to pay expenses was also in contemplation of the sale and that when the sale failed the contemplation or condition of the agreement also failed, thus entitling 3D to compensation for the expenses. However, the failure to complete the sale was apparently due to 3D's financial condition. In light of that fact I agree the doctrine of unjust enrichment is not available to 3D.

[¶ 19] Gerald W. Vande Walle, C.J.