2014 ND 133

**Wendell LUND, Plaintiff and Appellant**

**v.**

**Orville LUND and Betty Lund, Defendants**

**Betty Lund, Appellee.**

**No. 20130373.**

Supreme Court of North Dakota.

June 24, 2014.

Theresa L. Kellington, Bismarck, N.D., for plaintiff and appellant.

Michael S. McIntee, Towner, N.D., for appellee.

McEVERS, Justice.

[¶ 1] Wendell Lund appeals from a memorandum opinion and order entered after a court trial dismissed his complaint for breach of an implied contract against his parents, Orville and Betty Lund. We conclude the district court's memorandum opinion and order indicates the court intended its decision to be a final disposition of the lawsuit for purposes of treating this as an appeal from a final judgment. We also conclude the court did not err in determining there was no implied contract between Wendell Lund and his parents, and we affirm.

I

[¶ 2] In March 2011, this Court affirmed a property distribution in Orville and Betty Lund's divorce action, which determined the parents' 1991 deeding of forty acres of land in Bottineau County to Wendell Lund or Orville Lund was made solely for the purpose of disenfranchising Betty Lund of her property interests and homestead rights and was not a legitimate transaction. *Lund v. Lund,* 2011 ND 53, ¶¶ 1, 18–19, 795 N.W.2d 318. The divorce judgment awarded the land to Orville Lund with an offsetting cash award to Betty Lund, and each party received approximately half of the marital estate. *Id.* at ¶ 4.

[¶ 3] In May 2011, Wendell Lund sued his parents, alleging that he entered into an implied contract with them in 1985 to provide labor and supplies, to pay half the real estate taxes, to maintain the mowers and equipment used in cleaning and clearing the land, and to provide any other items necessary for the general maintenance of the land, and in exchange, his parents agreed to convey to him their interest in the forty acres of land. He claimed he expended a significant amount of money and labor into the property with the expectation that he would be fairly and reasonably compensated by his parents. Wendell Lund sought reimbursement of more than $545,000 from his mother and an order requiring his father to transfer the land to him.

[¶ 4] Betty Lund entered a special appearance through her attorney and moved to dismiss the action, claiming she was now a resident of Arizona and the court lacked personal jurisdiction over her. She also sought sanctions against Wendell Lund under N.D.R.Civ.P. 11. The district court dismissed Wendell Lund's claim against his mother, concluding the court lacked personal jurisdiction over her because she had moved to Arizona in 2010 and was not a North Dakota resident in 2011. The court also dismissed Betty Lund's request for sanctions under N.D.R.Civ.P. 11. Wendell Lund appealed the order dismissing his claim against his mother. This Court temporarily remanded to the district court for disposition of Wendell Lund's claim against his father, and the district

court dismissed that claim. This Court thereafter reversed the order dismissing Wendell Lund's claim against his mother, concluding the district court erred in determining it lacked personal jurisdiction over her and remanding for further proceedings. *Lund v. Lund,* 2012 ND 255, ¶¶ 1, 18–19, 825 N.W.2d 852.

[¶ 5] On remand, the district court granted Betty Lund's motion to amend her answer to add a cross-claim against Orville Lund for any liability that may be imposed against her. When Orville Lund did not answer or otherwise appear, Betty Lund moved for a default judgment on her cross-claim. The record, however, does not reflect a disposition of Betty Lund's pre-trial motion for a default judgment. After a court trial, the district court determined no implied contract existed between Wendell Lund and his parents and dismissed Wendell Lund's action in its entirety. The court explained Wendell Lund was not entitled to recover under an implied-in-law or unjust enrichment theory because the benefits he provided his parents were similar to benefits provided to the parents by him and his siblings and were reciprocal benefits for living in a house on the land. The court explained any benefits received by Betty Lund were not inequitable for her to retain. The court also determined no implied-in-fact contract existed between Wendell Lund and his parents because the surrounding circumstances involved family members with no mutual intent to convey the land. The court cited the presumption that services provided by family members are gratuitous and concluded Wendell Lund had not rebutted that presumption by showing his services were of an exceptional or extraordinary nature. The court concluded no implied contract existed between the parties and dismissed Wendell Lund's "claims in all things."

II

[¶ 6] Wendell Lund appeals from the "October 30, 2013 Memorandum Opinion and Order," which dismissed his "claims in all things."

[¶ 7] Memorandum opinions and orders generally are not appealable. *Lund,* 2011 ND 53, ¶ 5, 795 N.W.2d 318. However, an attempted appeal from an order for judgment or memorandum opinion will be treated as an appeal from a subsequently entered consistent judgment, if one exists. *Id.* This record does not reflect a subsequently entered judgment consistent with the court's memorandum opinion and order.

[¶ 8] This Court has also said an appeal may be taken from a memorandum opinion if there is an indication in the memorandum opinion that it was intended as a final order of the court. *Midwest Fed. Savs. Bank v. Symington,* 393 N.W.2d 753, 754 (N.D.1986). During oral argument to this Court, counsel for Betty Lund questioned this Court's jurisdiction, claiming her request for sanctions under N.D.R.Civ.P. 11 was still pending in the district court. This record reflects that in July 2011, Betty Lund sought sanctions against Wendell Lund under N.D.R.Civ.P. 11 when she moved to dismiss his action against her for lack of personal jurisdiction. When the district court dismissed Wendell Lund's action for lack of personal jurisdiction in April 2012, the court also dismissed her request for sanctions against him under N.D.R.Civ.P. 11. This record does not reflect any further request for sanctions under N.D.R.Civ.P. 11, and Betty Lund's counsel served a notice of entry of judgment on Wendell Lund in November 2013, with a copy of the district court's memorandum opinion and order. The memorandum opinion states the district court dismissed Wendell Lund's "claims in all

things" against his parents, and we conclude the memorandum opinion and order indicates the court intended it as a final disposition of all of Wendell Lund's claims in this action. We therefore treat this as an appeal from a final judgment dismissing Wendell Lund's action in its entirety.

### III

[¶ 9] Wendell Lund argues the district court erred in ruling there was no implied contract between his parents and him. He asserts he is entitled to $750,000 in compensation for his services and expenditures, which he now argues should be paid equally by his parents. He claims this Court should be left with a definite and firm conviction the district court made a mistake in determining no implied contract existed between his parents and him. He argues the district court erred in ruling his services were not exceptional or extraordinary to overcome the presumption that services by a family member are gratuitous.

[¶ 10] A valid contract requires parties capable of contracting, consent, a lawful object, and sufficient consideration. N.D.C.C. § 9–01–02. The parties' consent must be free, mutual, and communicated to each other. N.D.C.C. § 9–03–01. Under N.D.C.C. § 9–03–16, consent is not mutual unless the parties all agree upon the same thing in the same sense. Consideration is "[a]ny benefit conferred or agreed to be conferred upon the promisor by any other person to which the promisor is not entitled lawfully, or any prejudice suffered or agreed to be suffered by such person, other than such as that person, at the time of consent, is lawfully bound to suffer as an inducement to the promisor." N.D.C.C. § 9–05–01.

[¶ 11] "A contract is either express or implied." N.D.C.C. § 9–06–01. An express contract is "one the terms of which are stated in words." Id. An implied contract is "one the existence and terms of which are manifested by conduct." Id. "Express contracts and implied contracts are based on the mutual intentions of the parties." Jerry Harmon Motors, Inc. v. Heth, 316 N.W.2d 324, 327 (N.D.1982). "Express contracts are based on the express oral or written assent of the parties, and implied contracts are based on the surrounding facts and circumstances to determine whether or not the parties actually intended to enter into a contract but failed to articulate their promises." Id.

[¶ 12] Here, Wendell Lund claims the district court erred in ruling there was not an implied contract between his parents and him. " 'The law recognizes two classes of implied contracts: contracts implied in fact and contracts implied in law, more commonly referred to as quasi or constructive contracts.' " St. John Pub. Sch. Dist. No. 3 v. Engineers–Architects, P.C., 414 N.W.2d 285, 287 (N.D.1987) (quoting Jerry Harmon Motors, 316 N.W.2d at 327). An implied-in-fact contract is one in which the existence and terms of the contract are manifested by conduct. Lord & Stevens, Inc. v. 3D Printing, Inc., 2008 ND 189, ¶ 12, 756 N.W.2d 789. For contracts implied in fact, the court must determine from the surrounding circumstances what the parties actually intended. Id. Whether there is an implied contract between the parties is a question of fact subject to the clearly erroneous standard of review. Id.

[¶ 13] Ordinarily, a person who performs substantial services for another without an express agreement for compensation is entitled to the reasonable value of the services. In re Estate of Lutz, 2000 ND 226, ¶ 11, 620 N.W.2d 589. A presumption arises that the services were gratuitous and that compensation was not

intended when the services are performed by a family member. *Id.* The presumption may be overcome with evidence the services rendered are exceptional and extraordinary. *Id.* A family claimant has the burden of overcoming the presumption by proof the services were extraordinary and not gratuitous. *Id.* Whether the services are so exceptional and extraordinary as to imply a contract to pay for those services is a question of fact subject to the clearly erroneous standard of review. *Id.* at ¶ 12.

[¶ 14] A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if there is no evidence to support it, or if, on the entire record, we are left with a definite and firm conviction a mistake has been made. *Edward H. Schwartz Constr., Inc. v. Driessen*, 2006 ND 15, ¶ 6, 709 N.W.2d 733. Under the clearly erroneous standard of review, a district court's choice between two permissible views of the weight of the evidence is not clearly erroneous, and simply because we may have viewed the evidence differently does not entitle us to reverse the district court. *Id.* On appeal, we do not reweigh conflicts in the evidence, and we give due regard to the district court's opportunity to judge the witnesses' credibility. *Id.*

[¶ 15] Wendell Lund claims the parties' agreement in 1985 and their subsequent conduct created an implied-in-fact contract. This record reflects Wendell Lund lived on and used his parents' land for most of his life and assisted them with the land. According to Wendell Lund, he cleared grassland on the property, resulting in twenty two acres of farmable land that he used for an organic farming operation. There was some evidence all the family members, including Wendell Lund and his siblings, helped their parents around the home. However, the testimony of Wendell Lund and his mother about the existence of any agreement for compensation or conveyance of the land to Wendell Lund is conflicting, and Orville Lund did not testify at trial or otherwise appear in this action. The district court's findings about the testimony and evidence reflects the court did not find credible Wendell Lund's claim for an implied-in-fact contract. The court addressed the presumption about gratuitous services by family members, explaining the benefits received by Betty Lund from Wendell Lund were similar to those provided by his siblings when they returned home as well as the chores they did when growing up. The court also explained that while Wendell Lund was living on and using the property, his parents provided him with reciprocal benefits, including a house, assistance with yard work, and meals. The court determined any services provided by Wendell Lund were not of an extraordinary nature to overcome the presumption that services by a family member were gratuitous. *See Lutz*, 2000 ND 226, ¶¶ 13–14, 620 N.W.2d 589 (holding wife's care for dying husband was not extraordinary). The court said any services performed by Wendell Lund over the more than twenty year time span were rendered gratuitously, and he failed to present evidence to rebut the presumption that his services were gratuitous. Evidence in the record supports the court's determination, and we do not reweigh the evidence or reassess witness credibility. We are not left with a definite and firm conviction the district court made a mistake in finding that no implied-in-fact contract existed between the parties, or that the services provided by Wendell Lund were not extraordinary or exceptional. We conclude the court did not clearly err in finding no implied-in-fact contract between the parties.

[¶ 16] A contract implied in law or a claim of unjust enrichment is a fiction

of law adopted to achieve justice where no true contract exists. *Lord & Stevens,* 2008 ND 189, ¶ 9, 756 N.W.2d 789. In *Erickson v. Brown,* 2012 ND 43, ¶ 25, 813 N.W.2d 531 (citations omitted), this Court discussed recovery under unjust enrichment:

"A determination of whether or not there has been unjust enrichment is fully reviewable as a matter of law[.]" "Unjust enrichment is an equitable doctrine, applied in the absence of an express or implied contract, to prevent a person from being unjustly enriched at the expense of another." "The doctrine of unjust enrichment generally rests upon quasi or constructive contracts implied by law to prevent a person from unjustly enriching himself at the expense of another. The doctrine serves as a basis for requiring restitution of benefits conferred 'in the absence of an express or implied in fact contract.'" "To recover under a theory of unjust enrichment one must prove five elements (1) an enrichment; (2) an impoverishment; (3) a connection between the enrichment and the impoverishment; (4) absence of a justification for the enrichment and impoverishment; and (5) an absence of a remedy provided by law." "The essential element in recovering under a theory of unjust enrichment is the receipt of a benefit by the defendant from the plaintiff which would be inequitable to retain without paying for its value."

[¶ 17] Here, the district court determined the benefit received by Betty Lund would not be inequitable for her to retain without paying for its value and rejected Wendell Lund's claim for a contract implied in law or unjust enrichment. The court explained the benefits provided by Wendell Lund were similar in nature to the benefits provided by his siblings when they returned home. The court also said Wendell Lund received reciprocal benefits, including a house, meals, and assistance with yard work. On the record in this case, we agree with the district court's determination that any benefits received by Betty Lund would not be inequitable for her to retain without paying for its value. We conclude the court did not err in denying Wendell Lund's claim for unjust enrichment.

### IV

[¶ 18] We affirm the final judgment in the memorandum opinion.

[¶ 19] GERALD W. VANDE WALLE, C.J., DANIEL J. CROTHERS, DALE V. SANDSTROM, and CAROL RONNING KAPSNER, JJ., concur.