Filed 9/21/10 by Clerk of Supreme Court

IN THE SUPREME COURT

STATE OF NORTH DAKOTA

2010 ND 185

Curtis L. Sailer, Plaintiff and Appellee

v.

Sandra K. Sailer, Defendant and Appellant

No. 20100038

Appeal from the District Court of Burleigh County, South Central Judicial District, the Honorable Thomas J. Schneider, Judge.

REVERSED AND REMANDED.

Opinion of the Court by VandeWalle, Chief Justice.

Robert V. Bolinske Jr., 402 East Main, Suite 100, Bismarck, N.D. 58501, for plaintiff and appellee.

Kent M. Morrow, P.O. Box 2155, Bismarck, N.D. 58502-2155, for defendant and appellant.

Sailer v. Sailer

No. 20100038

VandeWalle, Chief Justice.

[¶1] Sandra Sailer appealed from the district court judgment entered after remand enforcing a prenuptial agreement with Curtis Sailer and making an equitable distribution of the parties’ jointly held property.  Because the district court did not comply with our instructions on remand in  
Sailer v. Sailer
, 2009 ND 73, 764 N.W.2d 445 (“
Sailer I
”), to support its decision, we reverse and remand for further proceedings.  

I

[¶2] Many of the relevant facts are set forth in our prior opinion in this case, 
Sailer I
, 2009 ND 73, 764 N.W.2d 445, and we will not repeat them except as necessary to assist in resolving the issues raised in the present appeal.

[¶3] Curtis Sailer and Sandra Sailer met in 1989.  The parties signed a prenuptial agreement on May 13, 1993, and were married on May 29, 1993.  Sandra Sailer had one child prior to their marriage, and the parties had three children during the marriage.  In November 2006, Curtis Sailer filed this action for divorce, and the district court held a trial in December 2007.  On March 18, 2008, the district court entered a divorce judgment, concluding the prenuptial agreement at issue was conscionable as a matter of law and holding the agreement was not so one-sided as to be unenforceable.  The court found Curtis Sailer did not waive an express provision of the prenuptial agreement by supporting his family with his income, awarded Curtis Sailer primary residential responsibility of the children, and awarded both parties decisionmaking responsibility for their children.  

[¶4] In 
Sailer I
, 2009 ND 73, ¶ 28, 764 N.W.2d 445, a majority of this Court concluded the district court did not provide sufficient findings for us to properly review its decision under N.D.C.C. § 14-03.1-07.   We affirmed in part, reversed in part, and remanded to the district court for further proceedings, stating:

We remand the issue of whether the prenuptial agreement is unconscionable as enforced to the trial court 
with instructions to value the parties’ assets, make findings as to their other resources, and determine their foreseeable needs
, in order to determine whether the agreement is unconscionable as enforced. We further direct the district court to make an equitable distribution of the jointly held property.

Sailer I
, at ¶ 53 (emphasis added). 

[¶5] After holding an evidentiary hearing on remand, the district court issued amended findings of fact and conclusions. The court ruled the prenuptial agreement was not unconscionable as enforced and equally distributed the parties’ jointly held property.

II

[¶6] On appeal, Sandra Sailer argues that the district court erred in holding the prenuptial agreement was not unconscionable as enforced and that the court did not make an equitable distribution of the parties’ jointly held property. 

A

[¶7] The Uniform Premarital Agreement Act, N.D.C.C. ch. 14-03.1, provides that premarital agreements may be unenforceable if the agreement is unconscionable at the time of its execution, of the separation or marital dissolution, or of its enforcement.  
See
 N.D.C.C. §§ 14-03.1-06(1)(b), -06(2), -07; 
see also
 
Sailer I
, 2009 ND 73, ¶ 22, 764 N.W.2d 445; 
Estate of Lutz
, 2000 ND 226, ¶ 25, 620 N.W.2d 589.  “The substantive enforceability of a premarital agreement is a matter of law to be decided by the court.”  
Sailer I
, at ¶ 21; 
see also
 N.D.C.C. § 14-03.1-06(3).  We review questions of law under the de novo standard on the entire record.  
Jangula v. Jangula
, 2005 ND 203, ¶ 9, 706 N.W.2d 85.

[¶8] Although the issue of whether a premarital agreement is unconscionable presents a question of law, “‘[the analysis] turns on factual findings related to the relative property values, the parties’ financial circumstances, and their ongoing need.’”  
Sailer I
, 2009 ND 73, ¶ 21, 764 N.W.2d 445 (quoting 
Binek v. Binek
, 2004 ND 5, ¶ 10, 673 N.W.2d 594).  In discussing “unconscionability,” the comment to section 6 of the Uniform Premarital Agreement Act explains that “[t]he test of ‘unconscionability’ is drawn from Section 306 of the Uniform Marriage and Divorce Act (UMDA),” that the standard of unconscionability is “used in commercial law” to protect against “one-sidedness, oppression, or unfair surprise,” and that the Act “does not introduce a novel standard unknown to the law.”  Unif. Premarital Agreement Act § 6 cmt., 9C U.L.A. 49-50 (2001).  In the marital context, the standard protects against “overreaching, concealment of assets, and sharp dealing not consistent with the obligations of marital partners to deal fairly with each other.”  
Id.
 at 50.

“In order to determine whether the agreement is unconscionable, the court may look to the 
economic circumstances of the parties resulting from the agreement, and any other relevant evidence
 such as the conditions under which the agreement was made, including the knowledge of the other party.  If the court finds the agreement not unconscionable, its terms respecting property division and maintenance may not be altered by the court at the hearing.” (Commissioner’s Note, Sec. 306, Uniform Marriage and Divorce Act.)

. . . .

Even if the conditions stated in subsection (a) [
see
 N.D.C.C. § 14-03.1-06(1)] are not proven, if a provision of a premarital agreement modifies or eliminates spousal support, subsection (b) [
see
 N.D.C.C. § 14-03.1-06(2)] authorizes a court to provide very limited relief to a party who would otherwise be eligible for public welfare (
see, e.g.
, 
Osborne v. Osborne
, 428 N.E.2d 810 (Mass.1981) (dictum); 
Unander v. Unander
, 506 P.2d 719 (Ore.1973) (dictum)).

Unif. Premarital Agreement Act § 6 cmt., 9C U.L.A. 50 (2001) (emphasis added); 
see also
 Unif. Premarital Agreement Act, Prefatory Note, 9C U.L.A. 37 (2001) (“[I]f a provision of a premarital agreement modifies or eliminates spousal support, and that modification or elimination would cause a party to be eligible for support under a program of public assistance at the time of separation, marital dissolution, or death, a court is authorized to order the other party to provide support to the extent necessary to avoid that eligibility.”).

[¶9] As we discussed in 
Sailer I
, 2009 ND 73, ¶ 26, 764 N.W.2d 445, the Legislature enacted an additional provision, N.D.C.C. § 14-03.1-07, which is not part of the Uniform Premarital Agreement Act.  Section 14-03.1-07, N.D.C.C., states:

Notwithstanding the other provisions of this chapter, if a court finds that 
the enforcement
 of a premarital agreement would be 
clearly unconscionable
, the court may refuse to enforce the agreement, enforce the remainder of the agreement without the unconscionable provisions, or limit the application of an unconscionable provision to avoid an unconscionable result.

(Emphasis added.)

[¶10] We have said this section supplements the standards of unconscionability found in N.D.C.C. § 14-03.1-06, and explained that whether a premarital agreement is “clearly unconscionable” under N.D.C.C. § 14-03.1-07 “requires [the district court to make] complete factual findings about the [parties’] relative property values,” in addition to the contesting spouse’s other resources and foreseeable needs.  
Estate of Lutz
, 1997 ND 82, ¶ 45, 563 N.W.2d 90; 
see also
 
Sailer I
, 2009 ND 73, ¶ 26, 764 N.W.2d 445.  Thus, “[e]ven if a premarital agreement has been validly and voluntarily obtained, its 
substantive effect
 may be unconscionable and thus unenforceable.”  
Estate of Lutz
, at ¶ 39 (emphasis added).

B

[¶11] Here, the district court held a hearing on remand and made additional factual findings.  

[¶12] During the hearing, Sandra Sailer testified that she had $275 in retirement accounts and her only vehicle was a 2001 Malibu.  She testified she was currently receiving housing assistance and paid approximately $250 per month for her apartment.  Sandra Sailer testified she had accumulated $80,000 to $90,000 in debts since the divorce action had been pending and has contemplated filing for bankruptcy protection.  She testified the debt was incurred for food, rent, gas, insurance, and other necessities.  She also testified the debt was partially incurred due to periods of unemployment.  Sandra Sailer testified that she received “commodity” foods because she did not qualify for food stamps, for which her only disqualifying factor was that she did not have custody of her children.  Sandra asserts on appeal that her normal monthly expenses of $900 per month are in excess of her total monthly income of $680, and that she is falling further into debt at a rate of $200 per month.

[¶13] Sandra Sailer testified she worked only 20 to 25 hours per week at her job, but attempted to supplement her income with a small side-business.  Sandra Sailer also indicated that she had had three jobs, but that one job ended because “it was destroying [her] knee, so [she] had to leave that or lose [her] knee in a couple of years,” and that she was not told the reason for her termination at another job, but she had collected unemployment benefits.  She testified that since May 2009, she had applied for more than 100 jobs without obtaining full-time employment with benefits.  Sandra Sailer testified that generally she had inquired about further education or training, looked at a local vocational college, but could not afford another loan.  She testified that Curtis Sailer refused to pay for any additional education during the marriage, that she is 44 years old, and has no job skills beyond retail and clerical work.

[¶14] In its memorandum opinion, the district court accepted Curtis Sailer’s values on the Rule 8.3 property and debt listing, with some adjustments to the assets and debts listed, and found the net estate at the time of the trial to be $873,132.50.  The court also found that they had “some” jointly owned property, which included a 2004 GMC Suburban and household property.  The court found the net value of the Suburban was $23,050.  Regarding the household property, the court found that the parties did not go over the household items in any detail at trial, nor did they list the items in detail on the Rule 8.3 property and debt listing.

[¶15] In distributing their jointly held property equally, the court simply ordered Curtis Sailer to pay Sandra Sailer half of the Suburban’s value, $11,525, and ordered that each party could keep the household goods in their possession.  The court found that most of the household items were used and would ultimately result in lower values if they were sold.  In equally distributing the jointly held property, however, the court did not undertake any analysis under the 
Ruff-Fischer
 guidelines.  
See, e.g.
, 
Eberle v. Eberle
, 2010 ND 107, ¶ 19, 783 N.W.2d 254 (after including all of the marital assets and debts, the court must apply the 
Ruff-Fischer
 guidelines to divide the property); 
see
 
Fischer v. Fischer
, 139 N.W.2d 845, 852-53 (N.D. 1966); 
Ruff v. Ruff
, 78 N.D. 775, 784, 52 N.W.2d 107, 111 (1952).

[¶16] The district court also ordered that the prenuptial agreement be enforced according to its terms.  We noted in 
Sailer I
, 2009 ND 73, ¶ 24, 764 N.W.2d 445, the parties had contracted in paragraph six of the prenuptial agreement, regarding spousal support and claims against each other’s property: 

“The parties agree that whether the marriage is terminated by death or legal proceedings, they will make no claim except as otherwise specifically provided in this agreement, on any part of the property of the other and waive all rights of power [sic], curtesy, community property, homestead, inheritance, succession, surviving spouse or family allowance, exempt property, claims for support, alimony, attorney’s fees and costs of property settlement.”

[¶17] In support of its decision holding the agreement conscionable, the district court on remand made the following findings of fact in its memorandum opinion:

Prior to the remand hearing, Sandra was employed and not receiving public assistance.  She was able to meet her foreseeable needs.  Now, she testified [during the remand hearing] that she is only working twenty to twenty-five hours per week and has some minimal self employment income.  She has changed jobs several times either because she was fired or quit.  There are no health limitations preventing Sandra from seeking suitable employment.  Sandra has not even bothered to check into any type of vocational training or education.  She has an attitude that somebody owes her something.  There is no legitimate reason preventing Sandra from meeting her foreseeable needs.  She can not just sit back and choose to work only a limited number of hours.

[¶18] Rather than making specific findings regarding what Sandra Sailer’s other resources and foreseeable needs actually are, the court in its memorandum opinion instead focused its analysis on whether the premarital agreement was unconscionable at the time it was executed:

Previously this Court found the prenuptial agreement to be conscionable as a matter of law.  For several reasons, the prenuptial agreement should be enforced. 

Right from the beginning Sandra was informed of all of Curtis’ property.  She received a full disclosure of all property and financial assets.  She knew why Curtis wanted to protect his assets.  With a full understanding, Sandra freely, knowingly, and voluntarily signed the Prenuptial Agreement giving up her right to any of Curtis’ assets.

Curtis would not have married Sandra without her signing the Prenuptial Agreement.  Sandra knew Curtis would not marry her if she did not sign the Prenuptial Agreement.

Throughout the marriage the parties did not commingle their assets.  They abided by the terms of the Prenuptial Agreement.  It is clear that the purpose of the Prenuptial Agreement was to keep the parties’ property separate.  However, Curtis did pay almost all of their living and household expenses.

Sandra knew about the disparity and the parties’ resources at the time of execution of the Prenuptial Agreement.  Now, she has or will receive exactly what she agreed to receive according to the Prenuptial Agreement.

[¶19] While the district court on remand made some findings regarding the parties’ relative property values, the court made scant findings regarding Sandra Sailer’s actual resources and foreseeable needs in deciding the substantive enforcement of the prenuptial agreement was not unconscionable.  The court concentrated mainly on Sandra Sailer’s understanding of the prenuptial agreement and her voluntary execution of the agreement.  In its memorandum opinion, the court stated that Sandra Sailer has or will receive “exactly what she agreed to receive according to the Prenuptial Agreement.”  These findings do not comply with the order on remand in 
Sailer I
.

[¶20] Although the district court found that Sandra Sailer could be working additional hours, this does not constitute complete findings analyzing her resources and foreseeable needs as required under N.D.C.C. § 14-03.1-07.  The court found that prior to the remand hearing Sandra Sailer was employed, not receiving public assistance, and “able to meet her foreseeable needs,” and that there was “no legitimate reason” preventing her “from meeting her foreseeable needs.”  The court, however, did not specifically make any findings as to what her “foreseeable needs” were.  Instead the court found Sandra Sailer was voluntarily underemployed, stating she cannot “just sit back and choose to work only a limited number of hours.”  The court made no findings regarding either her earning capacity or what she was capable of earning if she had full-time employment.  To the extent the court’s findings reflect the parties’ situation as of the date of the hearing on remand, we believe the correct date for determining the value of the parties’ relative property values, other resources, and foreseeable needs is at the enforcement of the prenuptial agreement, i.e., the date of the divorce.  
See
 
Murphy v. Rossow
, 2010 ND 162, ¶ 12 (district court on remand to determine the husband’s beneficiary interest in the family trust at the time of divorce); 
Ulsaker v. White
, 2009 ND 18, ¶ 17, 760 N.W.2d 82 (marital estate value normally calculated at the time of divorce).  

[¶21] Because the district court failed to make the required findings, we remand to the court for further proceedings.  On remand, the court must make complete findings, including specific monetary values, regarding Sandra Sailer’s available other resources and foreseeable needs, which under these facts and circumstances should also include findings regarding her future earning capacity at the time of the divorce.  If the court in its discretion reopens the record for additional evidence to assist in making these findings, Sandra Sailer should present specific evidence, rather than generalities, regarding her other resources, potential job prospects and earning capacity, in addition to her foreseeable needs at the time of the divorce.

[¶22] If the district court, based on complete findings, concludes the prenuptial agreement is “clearly unconscionable” as enforced, the court should “refuse to enforce the agreement, enforce the remainder of the agreement without the unconscionable provisions, or limit the application of [the] unconscionable provision to avoid an unconscionable result.”  The court may award spousal support or property in an equitable manner as necessary to avoid unconscionability under N.D.C.C. § 14-03.1-07.  Further, in distributing the parties’ jointly held property, rather than presuming an equal distribution of the property, the court must consider the 
Ruff-Fischer
 guidelines.

III

[¶23] The district court judgment is reversed, and we remand for further proceedings consistent with this opinion.

[¶24] Gerald W. VandeWalle, C.J.

Carol Ronning Kapsner

Daniel J. Crothers

Maring, Justice, dissenting.

[¶25] For the reasons I set forth in 
Sailer I
, 2009 ND 73, 764 N.W.2d 445 (Maring, J., dissenting), I respectfully dissent from Part IIB of the majority opinion because the undisputed facts from the record prove, as a matter of law, the premarital agreement was unconscionable as enforced.  On remand, the trial court again found the premarital agreement conscionable and ordered the agreement be enforced according to its terms.  Majority, at ¶¶ 16-17.  The trial court reasoned the premarital agreement between Sandra Sailer and Curtis Sailer was not unconscionable because “Sandra freely, knowingly, and voluntarily signed the Prenuptial Agreement giving up her rights to any of Curtis’ assets.”  By concentrating only on the procedural aspect of the premarital agreement, however, the trial court once again failed to recognize the substantive unconscionability of the agreement. 

[¶26] As I explained in 
Sailer I
, by signing the premarital agreement, “Sandra Sailer gave up all of her rights under the law.”  2009 ND 73, ¶ 69, 764 N.W.2d 445 (Maring, J., dissenting).  Enforcing the agreement will, therefore, leave Sandra Sailer with no real property, no assets, no spousal support, and no share in the marital home.  
Id.
 at ¶ 72.  By ordering the premarital agreement be enforced according to its terms, the trial court on remand left Sandra Sailer, after fifteen years of marriage and three children, with half of the parties’ Suburban’s value or $11,525, leaving undisturbed Curtis Sailer’s net estate of $873,132.50.  Majority, at ¶¶ 14-15. 

[¶27] The undisputed facts in the record show the premarital agreement was so one-sided and imposed such a severe hardship on Sandra Sailer as to make the agreement substantively unconscionable. Thus, as a matter of law, I would conclude the premarital agreement was unconscionable as enforced and would reverse the trial court’s judgment.

[¶28] Mary Muehlen Maring

Sandstrom, Justice, dissenting.

[¶29] I respectfully dissent.

[¶30] I was in the majority in 
Sailer v. Sailer
, 2009 ND 73, 764 N.W.2d 445.  The district court on remand properly decided the matters before it.  The district court saw the witnesses, heard the testimony, and decided credibility.  “[T]he trial court is in a better position to judge the demeanor and credibility of witnesses and weigh the evidence than we who have only the cold record to review.”  
Ludwig v. Burchill
, 481 N.W.2d 464, 469 (N.D. 1992).

[¶31] The district court found:

Prior to the remand hearing, Sandra was employed and not receiving public assistance.  She was able to meet her foreseeable needs.  Now, she testified that she is only working twenty to twenty-five hours per week and has some minimal self employment income.  She has changed jobs several times either because she was fired or quit.  There are no health limitations preventing Sandra from seeking suitable employment.  Sandra has not even bothered to check into any type of vocational training or education.  She has an attitude that somebody owes her something.  There is no legitimate reason preventing Sandra from meeting her foreseeable needs.  She can not just sit back and choose to work only a limited number of hours.

[¶32] The majority recites, at ¶ 13, “She testified that since May 2009, she had applied for more than 100 jobs without obtaining full-time employment with benefits.”  The majority omits mentioning that she was unable to identify any of these “100 jobs” she had applied for except the part-time one she had.

[¶33] The majority asserts, at ¶ 13, “Sandra Sailer testified that generally she had inquired about further education or training, looked at a local vocational college, but could not incur any further loans because of her existing debt.”  In fact the transcript does not reflect anything more than her comment, “If I pursued my degree through Rasmussen, I could be a guard out at the airport, I could be a social worker, I could be anything like that in that field.”  But she could not “recall” what cost would be and acknowledged she had “not sought out any loans,” had “[n]ot looked into any loans,” and had “[n]ot checked or gotten an application for any loans.”

[¶34] The district court appropriately determined credibility.

[¶35] Finally, the majority opinion highlights the infirmity of Sandra Sailer’s case when it says, at ¶ 21, “If the court in its discretion reopens the record for additional evidence to assist in making these findings, Sandra Sailer should present specific evidence, rather than generalities, regarding her other resources, potential job prospects and earning capacity, in addition to her foreseeable needs.”  She had her opportunity when we previously remanded this case.

[¶36] I would affirm.

[¶37] Dale V. Sandstrom