IN THE SUPREME COURT
STATE OF NORTH DAKOTA

2024 ND 224

Jennie Renae Olson,                                      Plaintiff and Appellant

v.

Jonathan Michael Olson,                                  Defendant and Appellee

No. 20240103

Appeal from the District Court of Grand Forks County, Northeast Central Judicial District, the Honorable John A. Thelen, Judge.

AFFIRMED.

Opinion of the Court by Bahr, Justice.

Patti J. Jensen (argued) and Ashley A. Olson (on brief), East Grand Forks, MN, for plaintiff and appellant.

Gregory W. Liebl (argued) and James E. Nicolai (on brief), Fargo, ND, for defendant and appellee.

**Olson v. Olson**
**No. 20240103**

**Bahr, Justice.**

[¶1]  Jennie Olson appeals from a divorce judgment enforcing the parties' premarital agreement. On appeal, Jennie Olson argues the district court erred in determining the agreement is valid and enforceable. She also argues the court abused its discretion by allowing a rebuttal witness to testify and by not admitting a text message as evidence. Both parties request attorney's fees and costs. We affirm the district court's judgment and deny both parties' request for attorney's fees and costs.

I

[¶2]  Jennie Olson and Jonathan Olson were married on August 22, 2020. Two days before the wedding, Jonathan Olson presented Jennie Olson with a premarital agreement. The agreement provided that in the event of a divorce each party would retain ownership of their separate property, defined as the property they owned by them on the date of their marriage. The parties signed the agreement the same day. At the time of the agreement, Jennie Olson had a net worth of $386,917, and Jonathan Olson had a net worth of $11,591,000. In July 2022, the parties separated, and Jennie Olson commenced this divorce action.

[¶3]  The parties stipulated to bifurcate the trial. The district court approved the stipulation and ordered the issue of the validity of the premarital agreement be bifurcated from and held before trial on the remaining issues. After the first trial, the court concluded the parties' agreement was valid and enforceable. After the second trial, the court determined the parties had no martial property.

II

[¶4]  After a three-day trial, the district court found the parties' premarital agreement "enforceable in all respects" and declared the agreement "to be valid and enforceable." Jennie Olson argues the court erred in determining the agreement is valid and enforceable.

1

[¶5]   The Uniform Premarital and Marital Agreements Act, N.D.C.C. ch. 14-03.2, governs all premarital agreements signed after July 31, 2013. N.D.C.C. § 14-03.1-02(1). A premarital agreement is a contract, and its interpretation is a question of law, which this Court reviews de novo on the entire record. *Fercho v. Fercho*, 2022 ND 214, ¶ 15, 982 N.W.2d 540. However, a district court's findings of fact are reviewed for clear error. *In re Estate of Lutz*, 2000 ND 226, ¶ 12, 620 N.W.2d 589. "A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if there is no evidence to support it, or if, after reviewing the entirety of the evidence, this Court is left with a definite and firm conviction a mistake has been made." *Fercho*, at ¶ 24.

A

[¶6]   Jennie Olson argues the premarital agreement is unenforceable because she did not have access to independent legal representation. She contends the time between when Jonathan Olson gave her the agreement and the signing of it was not a reasonable time to access legal representation.

[¶7]   Section 14-03.2-08(1)(b), N.D.C.C., provides a premarital agreement "is unenforceable if a party against whom enforcement is sought proves . . . [t]he party did not have access to independent legal representation" as defined in N.D.C.C. § 14-03.2-08(2). Section 14-03.2-08(2) provides,

> A party has access to independent legal representation if:
> a.   Before signing a premarital or marital agreement, the party has a reasonable time to:
>      (1)   Decide whether to retain a lawyer to provide independent legal representation; and
>      (2)   Locate a lawyer to provide independent legal representation, obtain the lawyer's advice, and consider the advice provided; and
> b.   The other party is represented by a lawyer and the party has the financial ability to retain a lawyer or the other party agrees to pay the reasonable fees and expenses of independent legal representation.

The presence of independent counsel is not a prerequisite to enforceability of a premarital agreement. *See Matter of Estate of Lutz*, 1997 ND 82, ¶ 31, 563 N.W.2d

2

90 (citing authority from other states for the proposition that independent counsel is not an absolute requirement for validity of an agreement). Rather, the party had to have "access" to independent legal representation. N.D.C.C. § 14-03.2-08(2). Jennie Olson had the burden to prove she did not have access to independent legal representation. N.D.C.C. § 14-03.2-08(1)(b).

[¶8] The district court found Jennie Olson had a reasonable time to access independent legal representation before signing the premarital agreement, but chose not to retain a lawyer. The court noted the parties signed the agreement on August 20, 2020 and married two days later. Although the agreement was signed two days before the wedding, the court found Jonathan Olson made Jennie Olson "aware of the need for a prenuptial agreement prior to marriage at least several if not many times, long before their engagement and long before their wedding." The court further found Jonathan Olson placed a draft of the agreement on the kitchen counter—as was the parties' common practice— approximately three weeks prior to the signing date. The court explained Jennie Olson could have sought legal counsel at any time prior to the signing as she was aware of Jonathan Olson's requirement for a premarital agreement. Furthermore, although Jonathan Olson scheduled a signing appointment two days before the wedding, the court found Jennie Olson still had time to call an attorney that day or the following day regarding the agreement. *See* N.D.C.C. § 14-03.2-06 ("A premarital agreement is effective on marriage.").

[¶9] We conclude the district court's findings Jennie Olson had access to independent legal representation is not clearly erroneous because there is evidence to support it and we are not left with a definite and firm conviction a mistake has been made.

B

[¶10] Jennie Olson argues the premarital agreement is unenforceable because she did not receive a full and complete financial disclosure from Jonathan Olson.

[¶11] A premarital agreement is unenforceable if, "[b]efore signing the agreement, the party did not receive adequate financial disclosure[.]" N.D.C.C. § 14-03.2-08(1)(d). A party has adequate financial disclosure if the party:

3

a. Receives a reasonably accurate description and good-faith estimate of value of the property, liabilities, and income of the other party;

b. Expressly waives, in a separate signed record, the right to financial disclosure beyond the disclosure provided; or

c. Has adequate knowledge or a reasonable basis for having adequate knowledge of the information described in subdivision a.

N.D.C.C. § 14-03.2-08(4). Jennie Olson had the burden to prove she did not receive adequate financial disclosure. N.D.C.C. § 14-03.2-08(1)(d).

[¶12] The district court found Jennie Olson had adequate knowledge or a reasonable basis for having adequate knowledge of Jonathan Olson's finances. The court explained Jennie Olson and Jonathan Olson started dating in 2013 and moved in together in 2015. The court found that since 2013 Jennie Olson observed Jonathan Olson's day-to-day involvement connected to his assets, including managing his properties in Grand Forks, acquiring a lake residence, renting properties, and managing businesses he owned. The court further found the couple shared an office in their home where Jennie Olson would organize Jonathan Olson's bills, invoices, bank statements, and tax returns; and that Jonathan Olson openly discussed his earnings, the number of businesses he owned, and the value of his assets. The court found Jennie Olson must have understood Jonathan Olson had significant income from his assets to maintain the lifestyle the couple shared.

[¶13] Furthermore, the district court found Jennie Olson and Jonathan Olson completed balance sheets, which were attached to the premarital agreement at the time of signing. Jennie Olson testified that Jonathan Olson assisted her in completing a balance sheet summary prior to the signing date. The balance sheets provided a detailed list of assets and liabilities of the parties.

[¶14] We conclude the district court's findings Jennie Olson received adequate financial disclosure from Jonathan Olson prior to signing the premarital agreement is not clearly erroneous because there is evidence to support it and we are not left with a definite and firm conviction a mistake has been made.

4

[¶15] Jennie Olson argues the district court erred in determining she voluntarily consented to the premarital agreement.

[¶16] A premarital agreement is unenforceable if a "party's consent to the agreement was involuntary or the result of duress." N.D.C.C. § 14-03.2-08(1)(a). Jennie Olson had the burden to prove she did not voluntarily consent to the premarital agreement. N.D.C.C. § 14-03.2-08(1)(a).

[¶17] The district court found Jennie Olson's consent to the premarital agreement "was voluntary and not a result of duress." The court found Jennie Olson appeared to be a very intelligent and competent business woman, owns a successful custom blind business, started a non-profit animal rescue project, previously ran a website design business, and has owned and managed rental properties. The court further found she has a college degree majoring in business. Additionally, the court found it difficult to believe Jennie Olson did not know what a premarital agreement was about because Jennie Olson entered into a settlement agreement from a prior marriage. Jennie Olson further acknowledged the disparity in the parties' wealth. Based on those and other factual findings, including that Jennie Olson was made aware of the need for the agreement long before the wedding, the court found Jennie Olson's consent to the agreement "was not involuntary or the result of duress."

[¶18] We conclude the district court's findings Jennie Olson voluntarily entered into the premarital agreement is not clearly erroneous because there is evidence to support it and we are not left with a definite and firm conviction a mistake has been made.

D

[¶19] Jennie Olson argues the premarital agreement was substantively unconscionable.

[¶20] Under N.D.C.C. § 14-03.2-08(6), a district court may find a term of a premarital agreement unenforceable if the term was unconscionable at the time

of signing. A court decides unconscionability as a matter of law. N.D.C.C. § 14-03.2-08(7).

[¶21] The district court did "not find any terms of the prenup, or the prenup, in whole or in part, to have been unconscionable at the time of signing."

[¶22] Jennie Olson argues bargaining power was not equal between the parties because Jonathan Olson was represented and Jennie Olson was not. She also alleges she lacked the business acumen and experience Jonathan Olson possessed. However, N.D.C.C. § 14-03.2-08(6) requires the party argue a *term* of the premarital agreement was unconscionable at the time the agreement was signed. Jennie Olson does not argue a specific term of the agreement was unconscionable.

[¶23] We conclude the district court did not err in holding no term of the premarital agreement was unconscionable at the time of signing.

III

[¶24] Jennie Olson argues the district court abused its discretion by allowing a rebuttal witness to testify. She argues the witness was not on Jonathan Olson's witness list and was not sequestered.

[¶25] A party may request the court order witnesses be excluded from hearing the testimony of other witnesses. N.D.R.Ev. 615. The sequestration rule applies to rebuttal witnesses. *State v. Hill*, 1999 ND 26, ¶ 6, 590 N.W.2d 187. "The purpose of sequestration is to prevent one witness's testimony from influencing another." *State v. Wanner*, 2010 ND 121, ¶ 13, 784 N.W.2d 143. "Sequestration also permits discovery of false testimony and credibility issues." *Id.*; *see also State v. Muhle*, 2007 ND 132, ¶ 34, 737 N.W.2d 647 ("The sequestration rule's purpose is to prevent witnesses from tailoring their testimony to what has already been presented and to assist in detecting less than candid testimony."); 1 McCormick on Evid. § 50 (8th ed.) (July 2022 Update) (discussing purposes of sequestrating witnesses). A district court has discretion to allow a witness to testify even though the witness heard prior testimony in violation of a sequestration order. *Wanner*, at ¶ 13. "This Court reviews a trial court's decision to permit a witness

6

to testify even though the witness heard prior testimony in violation of a sequestration order under an abuse of discretion standard." *Id.*; *see also State v. Skorick*, 2002 ND 190, ¶ 9, 653 N.W.2d 698 (reviewing court's admission of rebuttal testimony under abuse of discretion standard); *Ehrman v. Feist*, 1997 ND 180, ¶ 21, 568 N.W.2d 747 (reviewing court's refusal to allow testimony by rebuttal witnesses under abuse of discretion standard).

[¶26] At the beginning of the first trial, the parties agreed witnesses should be sequestered, and the district court ordered witness sequestration. During that trial, Jennie Olson testified that she learned about Jonathan Olson's desire for a premarital agreement days before the wedding. Jonathan Olson called a witness to rebut Jennie Olson's testimony. Jennie Olson objected to the witness's testimony, arguing the witness was not on Jonathan Olson's witness list and the witness's testimony violated the sequestration order because Jonathan Olson and his attorney talked to the witness about Jennie Olson's testimony. The court overruled the objection. Jennie Olson filed a motion for reconsideration, requesting the court strike and not consider the witness's testimony. The court denied the motion.

[¶27] In its order denying the motion for reconsideration, the district court explained Jonathan Olson's timely filed witness list "included a general statement of 'and any other person necessary to lay foundation or for rebuttal purposes.'" The court found the witness "was called as a rebuttal witness and was appropriately permitted to testify." Moreover, Jonathan Olson disclosed to Jennie Olson he was going to call the witness as a rebuttal witness thirteen days before he called the witness to testify. The court found Jonathan Olson's notice to Jennie Olson that he was going to call the witness as a rebuttal witness gave Jennie Olson "more than a reasonable amount of time" to allow her to contact and interview the witness prior to the witness's testimony.

[¶28] The scheduling order required the parties to exchange an index of all prospective witnesses. The order provided, "Any witness not on this index shall not be allowed to testify, except on a showing of good cause to include, but not limited to, a showing why that witness was not so designated." Some courts have held rebuttal witnesses are a recognized exception to witness disclosure

requirements. *See, e.g., Luxottica Grp., S.p.A. v. Airport Mini Mall, LLC*, 932 F.3d 1303, 1320 (11th Cir. 2019); 62A Am. Jur. 2d *Pretrial Conference* § 29 (Oct. 2024 Update). We need not decide whether rebuttal witnesses are required to be disclosed when not specifically ordered by the court. The duty to disclose a rebuttal witness may depend on whether the party calling the rebuttal witness could have reasonably anticipated the testimony or evidence sought to be rebutted. *See Morgan v. Com. Union Assurance Cos.*, 606 F.2d 554, 556 (5th Cir. 1979) (stating "a defense witness whose purpose is to contradict an expected and anticipated portion of the plaintiff's case in chief can never be considered a 'rebuttal witness,' or anything analogous to one."); *Sirotiak v. H.C. Price Co.*, 758 P.2d 1271, 1277–78 (Alaska 1988) (stating the standard for determining whether an undisclosed rebuttal witness should be allowed to testify depends "on whether the testimony sought to be rebutted could reasonably have been anticipated prior to trial"); 75 Am. Jur. 2d *Trial* § 280 (Oct. 2024 Update) ("The standard for determining whether a rebuttal witness should be allowed to testify when that person was not timely identified depends on whether the testimony to be rebutted could reasonably have been anticipated prior to trial.").

[¶29] Here, the scheduling order specifically provided the district court may allow an undisclosed witness to testify "on a showing of good cause," which included a showing why the witness was not disclosed. The court explained the witness was not called as a fact witness but to rebut Jennie Olson's testimony regarding when and what Jonathan Olson told Jennie Olson about wanting a premarital agreement. Although it did not use the words "good cause," the court's analysis shows it concluded Jonathan Olson showed good cause to call the witness to rebut Jennie Olson's testimony. Jennie Olson did not demonstrate the court's conclusion was an abuse its discretion. *See* 75 Am. Jur. 2d *Trial* § 280 (Oct. 2024 Update) (stating "where the relevance and existence of rebuttal evidence is not known until the other side has presented its case, a trial court does not commit an abuse of discretion by permitting the rebuttal, even though the rebuttal witness was not listed prior to trial").

[¶30] Regarding the sequestration order, the district court wrote, "It can reasonably be anticipated an attorney, or even the attorney's client as a proxy of the attorney, would need to speak with individuals to determine if they would

8

be able to refute prior testimony. It is not unforeseen that some information regarding a specific topic or testimony would need to be disclosed in order to determine whether a party would have the knowledge and information to serve as a rebuttal witness." The court further noted the witness's testimony did not appear to be negatively influenced or inappropriately tailored to the testimony of prior witnesses, nor was Jennie Olson prejudiced by the witness's testimony.

[¶31] "[T]he very function of a rebuttal witness is directed toward challenging the prior testimony of opposing witnesses . . . [R]ebuttal examination cannot be properly conducted without revealing, in some measure, the testimony which is subject to refutation." *Hill*, 1999 ND 26, ¶ 7 (quoting *United States v. Bramlet*, 820 F.2d 851, 855 (7th Cir. 1987)). The witness was not present and did not hear the testimony of witnesses. It was necessary that Jonathan Olson disclose some information with the potential witness to determine whether she could serve as a rebuttal witness. The witness's testimony was limited to responding to Jennie Olson's testimony. "The purpose of sequestration or exclusion of witnesses was not frustrated in this instance." *State v. Heart*, 334 N.W.2d 479, 482 (N.D. 1983); *cf.* 1 McCormick on Evid. § 50 (8th ed.) (July 2022 Update) (stating some courts have held the witness exclusion rule "does not apply to rebuttal witnesses or witnesses called to impeach credibility").

[¶32] We conclude the district court did not abuse its discretion in allowing the undisclosed witness to testify as a rebuttal witness.

IV

[¶33] Jennie Olson argues the district court abused its discretion by refusing to admit into evidence a text message discovered between the trials.

[¶34] This Court applies an abuse of discretion standard to a district court's evidentiary ruling. *Spottie, Inc. v. Baiul-Farina, Ltd.*, 2024 ND 88, ¶ 11, 6 N.W.3d 582. "A district court has broad discretion in admitting or excluding evidence at trial." *Id.* (quoting *State v. Thomas*, 2022 ND 126, ¶ 10, 975 N.W.2d 562). Our abuse of discretion standard is well-established:

9

> A district court has broad discretion on evidentiary matters, and we will not overturn its admission or exclusion of evidence on appeal unless that discretion has been abused. A district court abuses its discretion when it acts arbitrarily, capriciously, or unreasonably, or when its decision is not the product of a rational mental process or if it misinterprets or misapplies the law.

*Spottie, Inc.*, at ¶ 11 (quoting *State v. Salou*, 2024 ND 6, ¶ 7, 1 N.W.3d 602). This Court will not reverse a district court's decision whether to allow or to exclude evidence unless the party claiming error made an offer of proof as to the substance of the evidence and the party's substantial rights were affected. N.D.R.Ev. 103(a).

[¶35] At the second trial on the valuation and distribution of assets and debts, Jennie Olson offered a text message exchange between the parties, which included an attachment of the premarital agreement without the parties' balance sheets. In the text, Jonathan Olson told Jennie Olson, "This is the document we are signing at 2:30[.]" Jonathan Olson objected to admission of the text, stating the text went toward the enforceability of the premarital agreement and was not relevant to the second trial. Jennie Olson argued the text went toward Jonathan Olson's credibility. The district court sustained the objection on the ground the text message was not relevant to credibility and evidence should be limited to the parties' property. Jennie Olson's brief does not argue that her substantial rights were affected by the court's refusal to admit the text message as evidence.

[¶36] We conclude the district court did not abuse its discretion in refusing to admit the text message as evidence.

V

[¶37] Both parties request attorney's fees and costs in conjunction with the appeal. "Generally, each party to a lawsuit bears its own attorney's fees, absent statutory or contractual authority." *Trosen v. Trosen*, 2022 ND 216, ¶ 43, 982 N.W.2d 527. "This Court may award attorney's fees and costs under N.D.R.App.P. 38 if it determines an appeal is frivolous." *Albertson v. Albertson*, 2023 ND 191, ¶ 21, 996 N.W.2d 662.

10

[¶38] The parties' premarital agreement includes a provision stating:

> If either party should retain counsel for the purpose of enforcing or preventing the breach of any provision of this agreement or for any other judicial remedy relating to this agreement, each party shall be responsible for his or her own attorney's fees and costs incurred in the proceeding, including attorney fees, expert witness fees and court costs. All attorney fees, costs and expenses, including fees and expenses for expert witnesses, out-of-pocket costs and court costs, incurred respecting *any proceeding* for dissolution, legal separation or declaration of invalidity shall be the sole and separate obligation of the party incurring the same without contribution from the other party. We each expressly waive any right to seek an award of fees and costs from the other party in connection with *any proceeding* to terminate the marriage except if and to the extent authorized herein.

(Emphasis added.)

[¶39] The premarital agreement contractually provides both parties are responsible for their own attorney's fees for *any proceeding* regarding the agreement. "Any proceeding" includes this appeal. *See LAWC Holdings, LLC v. Vincent Watford, L.L.C.*, 2024 ND 16, ¶ 21, 2 N.W.3d 672 ("Because the agreement provided fees in *any action* to the prevailing party, appellate fees may also be awarded."). Because we hold the premarital agreement enforceable, we conclude we may not award either party attorney's fees or costs under the premarital agreement.

VI

[¶40] We affirm the district court's judgment.

[¶41] Jerod E. Tufte, Acting C.J.
Daniel J. Crothers
Lisa Fair McEvers
Douglas A. Bahr
Daniel S. El-Dweek, D.J.

11

[¶42] The Honorable Daniel S. El-Dweek, D.J., sitting in place of Jensen, C.J., disqualified.